GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
WILLIAM C. STAES
Assistant U.S. Attorney
Illinois State Bar No. 6314835
40 North Central Avenue, Suite 1800
Phoenix, Arizona  85004-4449
Telephone:  (602) 514-7500
William.Staes@usdoj.gov
*Attorneys for the United States of America*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B.A.D.J., on her own behalf and on behalf of her minor child X.B.J.A.,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV-21-00215-PHX-SMB<br><br>**UNITED STATES'<br>MOTION TO DISMISS** |

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6) for failure to state a claim.  This motion is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff B.A.D.J. brings this action, on behalf of herself and her minor child X.B.J.A., against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680 ("FTCA"), seeking damages based on her detention and separation from her child.  The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and committed itself to family reunification.[1]

---

[1] *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021, at https://www.whitehouse.gov/briefingroom/presidential-actions/2021/02/02/executive-order-on-the-establishment-of-interagency-task-force-on-the-reunification-of-families.

Nevertheless, Plaintiff's claims should be dismissed for multiple reasons.  First, Plaintiff's claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to the enforcement of federal criminal and immigration law.  Second, Plaintiff's claims are barred by the FTCA's due care exception, as the governmental actions that resulted in the separation were authorized by federal law.  *Id.*  Third, there is no private analog for Plaintiff's claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because Plaintiff's claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement, which are activities in which only the federal government, and not private parties, may engage.  Fourth, Plaintiff's claims should be dismissed because the FTCA does not authorize recovery for "constitutional torts" like those Plaintiff pursues here.  Fifth, Plaintiff's claims are barred because the FTCA does not waive sovereign immunity for institutional tort claims, such as Plaintiff's claims here.  Sixth, Plaintiff's claims are barred because they arise from her lawful detention and are therefore not actionable under Arizona law.  Alternatively, Plaintiff's negligence claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 8(a)(2) and 12(b)(6).

## RELEVANT BACKGROUND

### A.    Legal Framework for Noncitizens Entering the United States

Under the Immigration and Nationality Act ("INA"), any noncitizen present in the United States without being admitted or paroled is inadmissible and subject to removal.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C § 1325.

Noncitizens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims.  *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."

*Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  Specifically, such individuals "shall be detained pending a final determination of credible fear prosecution and, if found not to have such fear, until removed."  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A).  The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis."  8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii).

The federal government further possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).

**B.    Legal Framework for Immigration Custody Relating to Minors**

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States.  *See* 6 U.S.C. § 279; 8 U.S.C. § 1232.  The Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).    However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B).

In addition, the federal government entered into a settlement agreement (the *Flores*

- 3 -

Agreement)[2] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9). Under the *Flores* Agreement, DHS must expeditiously "transfer the minor to a non-secure, licensed facility[.]" *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

Notably, the *Flores* Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Id.* at 906; *see also United States v. Dominguez-Portillo*, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]"). Nor does it provide any rights to adult detainees, including any rights of release. *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, 2007 WL 1074070, *16 (W.D. Tex. Apr. 9, 2007). While the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

**C.     Prior Executive Branch Directives Regarding Immigration Enforcement**

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws. Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017). In January, 2017, the former President issued Executive Order No. 13767 ("EO 13767"), stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" *Id.* at § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id.* at § 6,

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id.* at § 11(d).  On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement, and directed that federal law enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.[3]

On April 6, 2018, the former Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum").  The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS-to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)."  *Id.*  Consistent with EO 13767, and the Zero Tolerance Memorandum, DHS referred for prosecution adult noncitizens – including those traveling with children – who unlawfully entered the United States along the Southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution.  Minor children of those adults were transferred to ORR custody as UACs.

**D.     Allegations of Plaintiff's Complaint**

On or about May 9, 2018, Plaintiff crossed the United States border at or near the city of San Luis, Arizona, with her minor child, in violation of 8 U.S.C. § 1325.  Compl. ¶¶ 88-89.  Shortly after crossing, Plaintiff and her child were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol agents and transported to a nearby holding center. *Id.* ¶¶ 23, 89.  Plaintiff was detained and separated from her child on May 11, 2018. *Id.* at ¶ 105.

Plaintiff was transferred to a CBP station in Wellton, Arizona, then to secure

---

[3] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

detention facilities in Santa Cruz, Arizona, and an Immigration and Customs Enforcement ("ICE") facility in Ocilla, Georgia.  *Id.* at ¶ 125.  Plaintiff's child was placed in the care of ORR, in accordance with federal statutes. More specifically, X.B.J.A. was placed in an ORR facility in Florida, where she spent two weeks, before being released to her father in California on or about May 26, 2008.  *Id.* at ¶¶ 121-23.  Plaintiff was never prosecuted.

In November 2018, after an immigration judge denied bond, Plaintiff signed her removal order and was deported to El Salvador.  *Id.* at ¶¶ 142-43. Within weeks of her deportation, on or about December 17, 2018, Plaintiff again crossed into the United States unlawfully, and was apprehended by Border Patrol agents, arrested, and taken into custody. *Id.* at ¶¶ 144-45.  In March 2019, Plaintiff was again deported to El Salvador, where she remained as of the filing of the Complaint.  *Id.* at ¶¶ 145, 147.

On February 8, 2021, Plaintiff commenced this lawsuit against the United States under the FTCA, seeking money damages to redress the "physical, mental, and emotional harm" that Plaintiff and her minor child suffered "because of the intentional, reckless, and negligent acts of the U.S. Government through its policy of family separation." *Id.* at ¶¶ 1, 13, 18.  Plaintiff alleges that the "U.S. Government's forcible separation" of her and her child was part of a policy "aimed at intentionally harming thousands of mostly Central American asylum-seeking families" and "deterring others from seeking refuge in the United States." *Id.* at ¶ 8.  The United States now moves to dismiss Plaintiff's lawsuit.

## ARGUMENT

### I.    Plaintiff's Claims Are Barred by the Discretionary Function Exception

The Court lacks subject matter jurisdiction over this action because the United States has not waived its sovereign immunity for Plaintiff's claims under the FTCA.  The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976).  Absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

Although the FTCA waives sovereign immunity for certain common-law tort claims, the statute contains express exceptions that "are designed to protect certain

important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992).  One such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  As the statute's legislative history explains, the FTCA was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion."  H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The discretionary function exception bars claims arising from governmental conduct that (1) "involve[s] an element of judgment or choice" and (2) is "based on considerations of public policy."  *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotations and citations omitted).  Under the first prong, courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow."  *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both "*specific* and *mandatory*," as well as conduct that violates the statute, regulation, or policy.  *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (internal quotations and citation omitted) (emphasis in original).

Under the second prong, courts evaluate whether the conduct at issue is "susceptible to policy analysis."  *Ferguson v. United States*, 792 Fed. Appx. 494, 495 (9th Cir. 2020). "The focus of the inquiry is *not* on the agent's subjective intent in exercising the discretion conferred by statute or regulation."  *Gaubert*, 499 U.S. at 325 (emphasis added).  Rather, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Id.* at 324; *see also Gonzalez v. United States*, 814 F.3d 1022, 1027-28 (9th Cir. 2016).  When the challenged governmental conduct "involve[s] an element of judgment or choice" and is "susceptible to" policy analysis, the discretionary function exception applies and the

complaint must be dismissed for lack of subject matter jurisdiction, regardless of whether the government acted negligently or abused its discretion. *See Gaubert*, 499 U.S. at 323; *Barian v. United States*, 728 Fed. Appx. 703, 704 (9th Cir. 2018); *Gordon v. United States*, 739 Fed. Appx. 408 (9th Cir. 2018) (affirming dismissal of action pursuant to Rule 12(b)(1)); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (same).

Here, Plaintiff B.A.D.J. was amenable to prosecution under 8 U.S.C. § 1325(a).  She and X.B.J.A. were separated by CBP, with B.A.D.J. subsequently detained in secure adult detention facilities following CBP custody, and X.B.J.A., rendered unaccompanied due to her mother being amenable to criminal prosecution, placed in the care and custody of ORR.[4]  Plaintiff's claims are barred because the governmental conduct from which her claims arise involves precisely the sort of discretionary decision-making that is shielded by the FTCA.  It is immaterial whether the discretionary decisions were made in furtherance of a policy that remains in place or one that subsequently has been rejected (as is the case here).  The decisions remain clothed in discretion and cannot give rise to liability under the FTCA.

"Discretion lies at the heart of the DHS law enforcement function."  *Blanco Ayala v. United States*, 982 F.3d 209, 215 (4th Cir. 2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999) (noting concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the

---

[4] Once the decision is made to detain an adult in a secure detention facility, separation of that adult from a child with whom he or she crossed the border is required. The statutory UAC definition is a broad one that includes circumstances where a parent is physically present but nevertheless unavailable to provide care and physical custody.  6 U.S.C. § 279(g)(2); *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016).  A parent who is detained in criminal custody or secure detention pending removal proceedings is no longer available to provide care and physical custody. Moreover, the *Flores* Agreement precludes detention of minors in secure detention facilities, absent circumstances not alleged here.  Rather, under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility."  828 F.3d at 902-03; *see also Bunikyte*, 2007 WL 1074070, at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care[.]").  Thus, separation occurs regardless of the UAC designation.

immigration context). The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1). "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added).[5] Indeed, decisions relating to noncitizens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1976)); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates issues of foreign policy.").[6]

---

[5] *See also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

[6] *See also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception[.]"); *Muick v. Reno*, 83 Fed. Appx. 851, 853 (8th Cir. 2003) (holding claim based on "classification and placement of inmates" barred by discretionary function exception); *Baires v. United States*, 2011 WL 1743224, at *7 (N.D. Cal. May 6, 2011) (decision "to send detainees to one facility or another" is "precisely the kind of conduct protected by the [discretionary function] exception"); *Newbrough v. Piedmont Reg'l Jail Auth.*, 2012 WL 169988, at *4 (E.D. Va. Jan. 19, 2012) (holding "detainee designation and classification decisions . . . fall squarely within the discretionary function exception"); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) ("ICE must weigh various policy considerations in deciding which suspected aliens to detain" and "how to detain them").

This policy-laden discretion necessarily entails decisions regarding with whom noncitizens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together.  In *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), for example, the court dismissed FTCA claims similarly arising from the prior administration's "family separation policies." As here, the plaintiffs in *Peña Arita* alleged that the "family separation" practices were unlawful and challenged various associated conditions of confinement.  *Id.* at 686-87.  In dismissing the plaintiffs' claims, the *Peña Arita* court agreed with the government that the "family separation policy itself and its implementation by officers in the field are discretionary."  *Id.* at 687 ("[P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception.").   Accordingly, the court held that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess."  *Id.* (quoting *Gaubert*, 499 U.S. at 323).

Here, Plaintiff was detained pursuant to the prior administration's enforcement of federal immigration statutes.  Such decision-making is not merely "susceptible to" policy analysis, but the government spelled out the policies that it sought to advance with its enforcement efforts in a series of specific Executive Branch directives.  As other courts have recognized, policies related to the secure immigration custody of adults as well as the Zero Tolerance Memorandum —which was subsequently revoked— "amounts to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General."  *Mejia-Mejia v. ICE*, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita*, 470 F. Supp. 3d at 686-87.

Ultimately, as a result of the government's discretionary and policy-based decision to securely detain Plaintiff, her minor child was placed in the care and custody of ORR, which was vested with authority to make a range of discretionary decisions to ensure the child's health and welfare. "It is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations." *Walding v.*

*United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013).  The same is true with respect to child welfare considerations made by ORR, such as what is in the "best interests of the child" and the type of setting appropriate for children.  *See* 8 U.S.C. § 1232(c)(2)(A); 6 C.F.R. § 115.14(a).  Accordingly, the separation that forms the basis of Plaintiff's complaint was the consequence of discretionary decision-making, and Plaintiff's claims must be dismissed for lack of subject matter jurisdiction. [7]

Plaintiff cannot circumvent the discretionary function exception by alleging that the government violated CBP internal policy to "maintain family unity to the greatest extent operationally feasible" and stating, "[g]enerally, family units with juveniles should not be separated." *See* Compl. ¶¶ 31 n.7.  The plain language of these policy statements explicitly grants the government discretion, using the permissive terms "should" and "to the greatest extent operationally *feasible*."  In order to overcome the discretionary function exception, Plaintiff must identify a statute, regulation or policy setting forth a course of conduct that is both "*mandatory* and *specific*," as well as conduct that violates said mandatory and specific statute, regulation, or policy.  *See Holy See*, 557 F.3d at 1084.  The CPB policy statements referenced in the Complaint do not meet this standard, as those statements are both generalized and permissive, not "mandatory and specific." [8]

Furthermore, while Plaintiff alleges that the government violated various alleged obligations regarding the conditions of confinement, the discretionary function exception bars any ancillary claims related to the alleged family separation, in addition to the physical separation itself.  *See Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (holding claims

---

[7] In *C.M. v. United States,* 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020), and *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020)*,* which also involved claims arising out of family separations at the Southwest border, the court found that the discretionary function did not apply because the plaintiffs in those cases "alleged plausible constitutional violations." Here, Plaintiff does not allege that federal officers violated the Constitution in exercising their discretion to detain Plaintiff in a secure detention facility and transfer her child to the care and custody of ORR, as required under federal law. *See generally* Compl.

[8] Moreover, contrary to Plaintiff's allegation that "no legal requirement . . . required" Plaintiff's separation, *see* Compl. ¶ 31 at n.7, once the government made the discretionary decision to detain Plaintiff in a secure detention facility, her minor child was placed in the care and custody of ORR, as required under federal law and the *Flores* Agreement, which precludes detention of minors in secure detention facilities.

1    "inextricably tied" or "inextricably linked" to conduct protected by section 2680(a) also

2    barred); *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985).  Indeed, even outside

3    of the family separation context, such challenges would be independently barred by the

4    discretionary function exception, as courts have repeatedly held that conditions-of-

5    confinement claims are subject to discretionary decision-making.[9]

6         In short, "[b]ecause the decision to detain an alien pending resolution of

7    immigration proceedings is explicitly committed to the discretion of the [Secretary] and

8    implicates [considerations of public] policy," it falls within the discretionary function

9    exception.  *Mirmehdi*, 689 F.3d at 984.  Accordingly, the separation that forms the basis of

10   Plaintiff's claims was the consequence of discretionary decision-making, and Plaintiff's

11   claims must be dismissed for lack of subject matter jurisdiction.

## II.   Plaintiff's Claims Are Barred by the FTCA's Due Care Exception

13        Plaintiff's claims also are foreclosed by the FTCA's due care exception, which bars

14   "[a]ny claim based upon an act or omission of an employee of the Government, exercising

---

[9] The Complaint references the frequency of communications between Plaintiff and her child (Compl. ¶¶ 5, 113, 159); lack of responses to requests about her child's whereabouts and wellbeing (*id.* at ¶¶ 5, 10, 68, 75, 112-113), crowding in detention (*id.* at ¶¶ 11, 63, 65), amount of food and access to drinking water (*id.* at ¶¶ 11, 64, 66, 91, 102, 135), inadequate medical care, bedding, toilets, personal hygiene items, clothing, temperature, and sanitation at detention facilities (*id.* at ¶¶ 11, 64, 66, 67, 98-102, 136, 138, 159). Courts have held that such claims are subject to discretionary decision-making involving numerous policy considerations and are therefore barred by the discretionary function exception. *See, e.g.*, *Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 Fed. Appx. 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 Fed. Appx. 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical treatment); *Ross v. United States*, 2013 WL 5290498, at *4 (N.D. Tex. Sept. 18, 2013) ("FTCA complaints of overcrowding, understaffing, and similar issues pertaining to a prisoner's living quarters are routinely found to be excluded from the FTCA by the discretionary function exception"); *Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, 2009 WL 763052, at *63 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).  Thus, "[w]here government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (holding claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception).

Among other things, this exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").  Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies, and the claim must be dismissed for lack of subject matter jurisdiction. *See Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill*., 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the due care exception forecloses Plaintiff's claims because the United States had the statutory authority to determine whether and where to detain Plaintiff after she entered the country without authorization, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority (indeed, an obligation under the TVPRA) to place her minor child in the custody and care of ORR while she was securely detained, *see* 8 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).[10]  In addition, Plaintiff's unlawful entry occurred at a time when the Executive Orders and other Executive Branch directives referred to above instructed federal agencies to strictly enforce federal immigration statutes, including

---

[10] As noted above, *supra* note 4, even if X.B.J.A. was not deemed a UAC, under *Flores*, separation still would have occurred once the government exercised its discretion to hold Plaintiff in a secure detention facility.

1   detaining adults pending removal proceedings.  Enforcement of federal immigration law
2   in a manner authorized by statute cannot form the basis of an FTCA claim.

**III.    Plaintiff's Claims Are Not Actionable Under the FTCA Because There Is No
        Private Person Analogue**

Plaintiff's claims further fail because the governmental conduct that Plaintiff
challenges has no private person analog.   The FTCA requires a plaintiff to allege
"circumstances where the United States, if a private person, would be liable to the claimant
in accordance with the law of the place where the act or omission occurred."  28 U.S.C. §
1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same
manner and to the same extent as a private individual under like circumstances."  28 U.S.C.
§ 2674.

Accordingly, the FTCA "requires a court to look to the state-law liability of private
entities, not to that of public entities, when assessing liability under the FTCA."  *United
States v. Olson*, 546 U.S. 43, 45- 46 (2005) (internal quotations omitted).  While the private
analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the
government actor sued would be subject to liability under state law if it were a private
person.  *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).  Thus, as
a general matter, the FTCA does not waive sovereign immunity for claims against the
United States based on governmental "action of the type that private persons could not
engage in and hence could not be liable for under local law."  *Chen v. United States*, 854
F.2d 622, 626 (2d Cir. 1988) (internal quotations omitted).

Here, Plaintiff's alleged harms stem from the government's decisions to enforce
federal criminal and immigration laws and hold Plaintiff in a secure adult detention facility
pending her immigration proceedings, which rendered her child "unaccompanied" and
resulted in the child's placement in the care and custody of ORR.  The United States has
not waived its sovereign immunity for such decisions because only the federal government
has the authority to enforce federal law and make determinations concerning the detention
of noncitizens.  Accordingly, such decisions have no private person analogue.  *See, e.g.*,
*Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (holding decision to

take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

The district court in *C.M. v. United States,* 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), found a private analogue by comparing a federal detention facility to a private nursing home.  However, in doing so, the *C.M.* court relied on *Estate of Smith v. Shartle*, 2020 WL 1158552 at *2 (D. Ariz. Mar 10, 2020), a case in which a sex offender inmate was housed with, and then murdered by, a gang member who previously had threatened to kill him. The *Shartle* court found an analogy to a nursing home's duty of care found in Arizona Revised Statutes § 46-455, which imposes civil liability on private nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect. The United States respectfully submits that the *C.M.* court's ostensible private person analogy—comparing the federal government's authority to enforce federal immigration law and to make discretionary determinations concerning the detention of noncitizens to the operation of a private nursing home—is inapposite.[11]

Indeed, courts have repeatedly held that governmental decisions concerning immigration have no private person counterpart and thus cannot serve as the basis for a claim under the FTCA.  *See, e.g.*, *Bhuiyan v. United States*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 Fed. Appx. 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing "immigration matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (holding, in matters relating to naturalization of aliens, "only the United States has the power to act" and thus "there is no private analog under state law"); *Omoniyi v. Dep't of Homeland Sec.*, 2012

[11] For the same reasons, the United States respectfully submits that the private person counterpart found in *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), also does not provide the "persuasive analogy" required by 28 U.S.C. §§ 1346(b)(1) and 2674.

- 15 -

WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) ("[T]he alleged misconduct of CIS in initially denying Plaintiffs [sic] naturalization application has no private analog . . . .").

The Second Circuit's decision in *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988) is instructive. In that case, the Second Circuit rejected the plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship, holding that the plaintiff failed to "satisf[y] the private analogue requirements." *Id.* at 1126.  In so holding, the court observed: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125 (internal quotations and citation omitted). Thus, the court determined, "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists," since, "[w]ithout doubt, no private citizen is empowered to certify the loss of American nationality." *Id.* at 1125-26.

The same is true here – the federal government's detention decisions are, without doubt, ones that no private actor is empowered to make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor."  *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016); *see also, e.g.*, *Buzzanca v. D.C.*, 2021 WL 796275, at *4 (D.D.C. Mar. 2, 2021) (dismissing FTCA claims, holding "[p]laintiff's claim rests on his wrongful detention, and only the government has the authority to detain"); *Portillo v. United States*, 2018 WL 523363, at *3 (D. Nev. Jan. 22, 2018) (dismissing FTCA claims, holding authority to "detain other persons" is "a uniquely governmental function that has no private analogue"), *aff'd*, 741 Fed. Appx. 415 (9th Cir. 2018).  Accordingly, Plaintiff's claims should be dismissed.

## IV.    Plaintiff's Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts

Plaintiff's claims are also barred because the FTCA does not authorize constitutional tort claims like those Plaintiff pursues here. While the FTCA provides a limited waiver of sovereign immunity for certain common-law tort claims, the Supreme Court has held that the FTCA does not provide a cause of action for torts involving alleged constitutional violations.  *Meyer*, 510 U.S. at 477-78.  Indeed, as the Supreme Court

explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)). "A constitutional tort claim . . . could not contain such an allegation." *Id.* at 477. Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.* at 478; *Roundtree v. United States,* 40 F.3d 1036, 1038 (9th Cir. 1994) ("United States cannot be sued on the theory that there has been a violation of [plaintiff's] constitutional rights.").

In the instant case, Plaintiff's claims appear to be based, at least in part, on the conditions of confinement that she experienced at detention facilities in Arizona and Georgia. Although Plaintiff labels her claims as claims for IIED, negligence, and loss of child consortium, courts have recognized that claims based on conditions of confinement are more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'" *Aguilar v. United States*, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (dismissing allegations regarding food, crowding, and sanitation at CBP detention facility); *see also, e.g.*, *Sutter v. United States*, 2019 WL 1841905, at *4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted); *Thompson v. United States*, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is constitutional claim that cannot be brought under FTCA).

Notably, Plaintiff does not allege that federal officers violated the Constitution in separating Plaintiff and her child as authorized by federal statutes. Moreover, it has been recognized by at least one court in the family separation context that an alleged constitutional violation did not defeat application of the FTCA's discretionary function exception. *See Peña Arita*, 470 F. Supp. 3d at 688 (dismissing FTCA claims based on family separation, holding, in part, "to the extent Plaintiffs . . . assert that the Constitution itself furnishes a nondiscretionary standard . . . such claim is jurisdictionally barred").

**V.      Plaintiff's Claims Are Barred Because the FTCA Does Not Authorize Direct Liability or Institutional Tort Claims Against the Government**

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain common-law torts committed by federal employees acting within the scope of their employment.  *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)).  The plain language of 28 U.S.C. § 1346(b) requires a plaintiff to establish that the conduct of individual government employee(s) caused harm:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of *any employee of the Government while acting within the scope of his office or employment* . . .

(emphasis added).  Furthermore, in *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), the Ninth Circuit held that the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Id.* at 1052-55.  Hence, as a matter of law, a plaintiff cannot assert "systemic" claims under the FTCA, but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment.

Recently, in *Lee v. United States*, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), the court applied *Adams* in a FTCA action based on the "generalized negligence" of various government employees, contractors, and agents responsible for operating a prison facility. *Id.* at *6.  Applying *Adams*, the court dismissed plaintiff's FTCA claims, holding that the "FTCA applies only to 'the negligent or wrongful act or omission of *any employee of the United States* while acting within the scope of his office or employment,' not to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." *Id.* (emphasis in original).

Here, as in *Lee*, Plaintiff seeks to raise institutional or "systemic" tort claims against the United States, alleging that various unidentified federal employees and officials of many different federal agencies engaged in tortious conduct "as a whole," rather than

alleging specific tortious acts or omissions on the part of individual federal employees.[12] The FTCA's limited waiver of sovereign immunity does not encompass "systemic" tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Id.*  Because that is what Plaintiff alleges here, her claims are not cognizable under the FTCA and should be dismissed.

## VI.  Plaintiff's Claims Are Not Actionable Under Arizona Law

In addition, Plaintiff's claims should be dismissed because they arise from her lawful detention and are therefore barred under applicable state law. Under Arizona law, an individual cannot recover in tort for injuries sustained as a consequence of his or her own criminal conduct and lawful detention. *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017).  For example, in *Muscat*, the Arizona Court of Appeals held that a plaintiff, who sought to recover in tort for "pain, suffering, distress, [and] mental and emotional anguish," had not suffered a "legally cognizable injury" because the alleged harms flowed from his lawful incarceration.  *Id.* at 198-99.  In doing so, the court explained, "recognizing the legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the long-established public policy of personal accountability for criminal behavior." *Id.* at 198.

Here, Plaintiff was lawfully detained after she crossed the United States-Mexico border in violation of federal law.  As a direct consequence of being subject to mandatory immigration custody pending expedited removal proceedings, Plaintiff was securely detained and separated from her minor child in accordance with federal statutes.  Plaintiff's tort claims, which seek to recover for harm suffered as a result of that separation, are not actionable under state law because, as in *Muscat*, the harm that Plaintiff alleges here flows

---

[12] In the Complaint, Plaintiff alleges that the "U.S. Government, federal officials, and federal employees referenced above" engaged in the alleged conduct underlying her claims. *See* Compl. ¶¶ 162, 167, 172. However, throughout her Complaint, Plaintiff attributes the alleged tortious conduct to the "U.S. Government" or "U.S. Government officials," not to specific individual federal employees. *See, e.g., id.* at ¶¶ 64 ("The U.S. Government failed to provide . . ."); 66 ("The U.S. Government violated . . . "); 68 ("U.S. Government officials also taunted and threatened parents . . ."); 75 ("The U.S. Government failed to provide parents with information . . ."); 77 ("U.S. Government officials frequently insulted . . .").

from her lawful detention.  *See Muscat*, 244 Ariz. at 198.

## VII.   Plaintiff's Negligence Claim Should Be Dismissed For Failure To State a Claim

Alternatively, Plaintiff's negligence claim (Count 2) should be dismissed for failure to state a claim.  Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint's allegations must give defendants "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555.  The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 214 Ariz. 141, 143 (Ariz. 2007).  "To bring a colorable FTCA claim, Plaintiff must first meet the minimum pleading standards required to state an underlying negligence claim against a federal employee for which the Government can then be held liable."  *Lee*, 2020 WL 6573258, at *6.  Plaintiff fails to do so here.

Plaintiff alleges that "[t]he U.S. Government, federal officials, and federal employees referenced above had a legal duty to Plaintiffs to act with ordinary care and prudence so as not to cause harm or injury." Compl. ¶ 167. In addition to failing to identify the source of Arizona law imposing such a duty, *see Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (noting "any duty that the United States owed to plaintiffs must be found in . . . state tort law"), the Complaint is void of specific factual allegations that any *particular federal employee* "was negligent in performing his or her responsibilities" relating to the alleged detention and separation, "or how any of the

particular employee's negligent acts or omissions contributed" to Plaintiff's alleged injury. *See Lee,* 2020 WL 6573258, at *6.   The Complaint does not identify the specific conduct that Plaintiff claims to have been negligent.  Indeed, Plaintiff merely alleges that the federal government and unidentified federal employees referenced throughout the Complaint "failed to act with ordinary care and breached their duty of care owed to Plaintiffs," without specifying what particular acts or omissions serve as the basis of her negligence claim.  *See* Compl. ¶ 168.

Courts in this District have not hesitated to dismiss FTCA suits that relied on general allegations against unspecified federal employees and that failed to plead how any specific federal employee breached a duty of care.  *See, e.g.*, *Lee,* 2020 WL 6573258, at *5-6 (holding "allegations—generically stated and shared by up to a dozen federal employees— are insufficient to state an FTCA claim against the Government"); *Tsosie v. United States*, 2019 WL 2476601, at *4-5 (D. Ariz. June 13, 2019) (dismissing FTCA claim holding that plaintiffs' "failure to name specific healthcare providers in the Complaint or identify how these providers were negligent does nothing more than make conclusory statements"); *Snyder v. United States*, 2013 WL 1867008, at *1 (D. Ariz. May 2, 2013) (dismissing FTCA claim holding, while the complaint "mentions many doctors . . . and generally asserts that they engaged in various forms of misconduct," plaintiff has not "pled specific facts as to how any of the individual doctors" breached a duty of care); *Mathis v. United States*, 2011 WL 4352291, at *1 (D. Ariz. Sept. 16, 2011) (holding "claims asserted against unnamed 'medical staff' are insufficient to state a . . . claim under Rule 8"); *Dominguez ex rel. Dominguez Rivera v. Corbett*, 2010 WL 3619432, at *7-8 (D. Ariz. Aug. 5, 2010) (dismissing FTCA claim holding claim "does not contain facts regarding any individual employee (by either name or description), who, acting within the scope of their employment, committed a tort against Plaintiff").

Plaintiff must allege sufficient facts—not simply "labels and conclusions" or "[t]hreadbare recitals of the elements of a cause of action"—that would give the government "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 678.  "Absent specific

1  allegations regarding the roles and responsibilities of individual federal employees, how

2  each employee breached his or her duties of care," including the specific conduct alleged

3  to have breached said duties, "and how their negligent conduct caused [Plaintiff] harm,"

4  Plaintiff's allegations are "too vague and conclusory" to give the United States fair notice

5  of her claim and the grounds upon which it rests. *See Lee*, 2020 WL 6573258, at *7.

6  Accordingly, Plaintiff's negligence claim should be dismissed for failure to state a claim

7  under Fed. R. Civ. P. 8(a) and 12(b)(6).

8  **<u>CONCLUSION</u>**

9  For the foregoing reasons, this action should be dismissed.

10

11  RESPECTFULLY SUBMITTED this 10th day of May, 2021.

12
13  GLENN B. McCORMICK
     Acting United States Attorney
     District of Arizona
14

15  s/*William C. Staes*
     WILLIAM C. STAES
16  Assistant United States Attorney
     *Attorneys for the United States*

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

**Austin Clark Yost**
**Christopher David Thomas**
**Joel W Nomkin**
PERKINS COIE LLP − PHOENIX, AZ
2901 N Central Ave., Ste. 2000
Phoenix, AZ 85012
Tel: 602−351−8000
Fax1: 602−351−7000 (Yost and Thomas)
Fax2: 602-648-7185 (Nomkin)
ayost@perkinscoie.com
cthomas@perkinscoie.com
JNomkin@perkinscoie.com

**David S Almeling**
OMELVENY & MYERS LLP − SAN FRANCISCO, CA
2 Embarcadero Ctr., 28th Fl.
San Francisco, CA 94111
Tel: 415−984−8700
Fax: 415−984−8701
dalmeling@omm.com

**Greg Suhr**
**R Collins Kilgore**
**Vanessa Guerrero**
OMELVENY & MYERS LLP − LOS ANGELES, CA
400 S Hope St., 18th Fl.
Los Angeles, CA 90071
Tel: 213−430−6000
Fax1: 213−430−5407 (Suhr)
Fax2: 213-430-6407 (Kilgore and Guerrero)
gsuhr@omm.com
ckilgore@omm.com
vguerrero@omm.com

*Attorneys for Plaintiff*

*s/ Mary Finlon*
U.S. Attorney's Office