Joel W. Nomkin (AZ Bar No. 011939)
Christopher D. Thomas (AZ Bar No. 010482)
Austin Yost (AZ Bar No. 034602)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012
Telephone:  (602) 351-8000
jnomkin@perkinscoie.com
cthomas@perkinscoie.com
ayost@perkinscoie.com

David Almeling* (CA Bar No. 235449)
Vanessa Guerrero* (CA Bar No. 329915)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  415-984-8700
Facsimile:  415-984-8701
dalmeling@omm.com
vguerrero@omm.com

R. Collins Kilgore* (CA Bar No. 295084)
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, CA  90071
Telephone:  (213) 430-6000
ckilgore@omm.com

*Attorneys for Plaintiffs*

[*Admitted pro hac vice*]

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| B.A.D.J. on her own behalf and on behalf of her minor child, X.B.J.A., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. 2:21-cv-00215-SMB <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

| | | Page |
|---|---|---|

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 2

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ............................................................................................................ 3

    I.     Defendant Cannot Establish that the Discretionary Function Exception Bars Plaintiffs' Claims. ........................................................................... 3

          A.   Defendant Did Not Have Discretion to Violate the Constitution or Federal Mandates in Separating Belinda and Xenia. ............. 4

          B.   Even If the Government's Actions Were Not Unconstitutional, It Had No Discretion to Declare Xenia "Unaccompanied" or Send Her to ORR. ............................................................................. 7

    II.    No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did Not Act with Due Care. ............................................... 10

          A.   No Statute or Regulation Mandated Plaintiffs' Separation. ....... 11

          B.   The Separation of Children from Their Parents at the Hands of Government Agents Was Done Without Due Care .................. 13

    III.   Plaintiff's Tort Claims Satisfy the Broad Private Analog Inquiry. ..... 14

    IV.   Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's Tortious Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights. ...................................................................................... 17

    V.    Plaintiffs Allege Tortious Actions of Individual Government Employees and Do Not Rely Only on Institutional Acts of the Government As a Whole. ...................................................................... 19

    VI.   Arizona Law Does Not Shield Defendant's Independently Tortious Acts ...................................................................................... 20

    VII.  Plaintiffs Allege the Elements of a Negligence Claim. ..................... 21

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P.F. v. U.S.*,
    492 F. Supp. 3d 989 (D. Ariz. 2020) ..........................................................passim

*Aguilar v. U.S.*,
    2017 WL 6034652 (S.D. Tex. June 7, 2017)......................................................18

*Akutowicz v. U.S.*,
    859 F.2d 1122 (2d Cir. 1988) ...........................................................................16

*Andreini v. U.S.*,
    2017 WL 3895705 (N.D. Cal. Sept. 6, 2017).....................................................7

*Arita v. U.S.*,
    470 F. Supp. 3d 663 (S.D. Tex. 2020)............................................................6, 7

*Bailey v. U.S.*,
    623 F.3d 855 (9th Cir. 2010) ...............................................................................6

*Bickler v. Senior Lifestyle Corp.*
    2010 WL 2292985 (D. Ariz. June 8, 2010) ......................................................16

*Borquez v. U.S.*,
    773 F.2d 1050 (9th Cir. 1985) ...........................................................................11

*Broadbent by Broadbent v. Broadbent*,
    184 Ariz. 74 (1995)...........................................................................................15

*Buzzanca v. D.C.*
    523 F. Supp. 3d 64 (2021) .................................................................................17

*C.M. v. U.S.*,
    2020 WL 1698191 (D. Ariz. Mar. 30, 2020) *motion to certify appeal denied*,
    2020 WL 5232560 (D. Ariz. July 6, 2020)..................................................passim

*C.P. Chemical Co. v. U.S.*,
    810 F.2d 34 (2d Cir. 1987) ................................................................................16

*Chadd v. U.S.*,
    794 F.3d 1104 (9th Cir. 2015) .............................................................................3

*Cook v. Tex. Dep't of Crim. Justice Transitional Planning Dep't*,
    37 F.3d 166 (5th Cir. 1994) ...............................................................................18

*D.B. v. Cardall*,
    826 F.3d 721 (4th Cir. 2016) ...............................................................................9

*DeMontiney v. Desert Manor Convalescent Ctr. Inc.*,
    144 Ariz. 6 (1985)..............................................................................................21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Dugard v. U.S.*,
   835 F.3d 915 (9th Cir. 2016) ...................................................................14

*Estate of Smith v. Shartle*,
   2020 WL 1158552 (D. Ariz. Mar. 10, 2020)................................15, 17

*Fazaga v. Fed. Bureau of Investigation*,
   916 F.3d 1202 (9th Cir. 2019) ...................................................................4

*FDIC v. Meyer*,
   510 U.S. 471 (1994).........................................................................17, 18

*Ferguson v. U.S.*,
   2016 WL 4793180 (S.D. Cal. Sept. 14, 2016) ...............................10, 11

*Flores v. Sessions*,
   2018 WL 4945000 (C.D. Cal. July 9, 2018)............................................10

*Galvin v. Hay*,
   374 F.3d 739 (9th Cir. 2004) .....................................................................4

*Garcia-Feliciano v. U.S.*,
   2014 WL 1653143 (D.P.R. Apr. 23, 2014) ..............................................13

*Gipson v. Kasey*,
   214 Ariz. 141 (Ariz. 2007) ......................................................................21

*Gonzalez v. U.S.*,
   2013 WL 942363 (C.D. Cal. March 11, 2013)........................................11

*Hatahley v. U.S.*,
   351 U.S. 173 (1956)..................................................................................13

*Hill v. Safford Unified Sch. Dist.*,
   191 Ariz. 110 ( Ct. App. 1997).................................................................15

*Indian Towing Co. v. U.S.*,
   350 U.S. 61 (1955)....................................................................................14

*Jacinto-Castanon de Nolasco v. U.S. Immigration and Customs Enf't*,
   319 F. Supp. 3d 491 (D.D.C. 2018)......................................................4, 8

*Kwai Fun Wong v. Beebe*,
   2006 WL 977746 (D. Or. Apr. 10, 2006) ...............................................11

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .....................................................................9

*Lee v. U.S.*,
   2020 WL 6573258 (D. Ariz. Sept. 18, 2020) ...................................19, 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Limone v. U.S.*,
579 F.3d 79 (1st Cir. 2009).................................................................................19

*Liranzo v. U.S.*,
690 F.3d 78 (2d Cir. 2012)..................................................................................16

*Martinez v. U.S.*,
2018 WL 3359562 (D. Ariz. July 10, 2018)................................................15, 17

*McGowan v. U.S.*
825 F.3d 118 (2d Cir. 2016) ................................................................................16

*Mejia- Mejia v. ICE*,
2019 WL 4707150 (D.D.C. Sept. 26, 2019)...........................................................7

*Miracle v. Hobbs*,
427 F. Supp. 3d 1150 (D. Ariz. 2019) ...................................................................3

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .................................................................................3

*Ms. L. v. U.S. Immigration and Customs Enf't*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018) *modified by* 330 F.R.D. 284 (S.D. Cal.
2019) ..................................................................................................................5, 8

*Muscat v. Creative Innervisions LLC*,
244 Ariz. 194 (Ct. App. 2017)......................................................................20, 21

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
527 F.2d 1252 (2d Cir. 1975) ........................................................................13, 14

*Nurse v. U.S.*,
226 F.3d 996 (9th Cir. 2000) .......................................................................passim

*Pankratz v. Willis*,
155 Ariz. 8 (Ct. App. 1987)..................................................................................15

*Portillo v. U.S.*
2018 WL 523363 (D. Nev. Jan. 22, 2018) ...........................................................17

*Prisco v. Talty*,
993 F.2d 21 (3d. Cir. 1993) ..................................................................................19

*Raz v. U.S.*,
343 F.3d 945 (8th Cir. 2003) ................................................................................19

*Sanders v. Alger*,
242 Ariz. 246 (2017)......................................................................................15, 21

*Save the Peaks Coal. v. U.S. Forest Serv.*,
2010 WL 3800896 (D. Ariz. Sept. 22, 2010) .......................................................13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Spotts v. U.S.*,
  613 F.3d 559 (5th Cir. 2010) ................................................................. 6

*Sutter v. U.S.*,
  2019 WL 1841905 (C.D. Cal. Mar. 12, 2019) ...................................... 18

*Tekle v. U.S.*,
  511 F.3d 839 (9th Cir. 2007) ............................................................... 15

*Thompson v. U.S.*,
  2015 WL 5567934 (M.D. Pa. Sept. 21, 2015) ...................................... 18

*U.S. v. Gaubert*,
  499 U.S. 315 (1991) ........................................................................ 3, 7

*U.S. v. Muniz*,
  374 U.S. 150 (1963) ..................................................................... 14, 15

*U.S. v. Orleans*,
  425 U.S. 807 (1976) ........................................................................... 19

*Welch v. U.S.*,
  409 F.3d 646 (4th Cir. 2005) ................................................. 10, 11, 13

*Wong Wing Fai Co., S.A. v. U.S.*,
  840 F.2d 1462 (9th Cir. 1988) ............................................................. 5

*Xue Lu v. Powell*,
  621 F.3d 944 (9th Cir. 2010) ............................................................... 14

*Zabriskie v. Fed. Nat'l Mortg. Ass'n*,
  109 F. Supp. 3d 1178 (D. Ariz. 2014) .................................................. 3

**Statutes**

28 U.S.C. § 1346(b)(1) ............................................................................ 19

28 U.S.C. § 2671 ..................................................................................... 19

28 U.S.C. § 2674 ..................................................................................... 14

28 U.S.C. § 2680(a) .......................................................................... 10, 13

6 U.S.C. § 279 ........................................................................................ 12

6 U.S.C. § 279(g) ..................................................................................... 7

6 U.S.C. 279(g) ........................................................................................ 9

8 U.S.C. § 1225 ...................................................................................... 12

8 U.S.C. § 1226(a) .................................................................................. 12

8 U.S.C. § 1231(g)(1) ............................................................................. 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

8 U.S.C. § 1232(b)(1) ..................................................................... 8, 10

8 U.S.C. § 1232(b)(3) ....................................................... 7, 8, 10, 12

8 U.S.C. § 1232(c)(2)(A) ................................................................ 8, 12

8 U.S.C. § 1232(g) ............................................................................... 12

8 U.S.C. § 279(g) ................................................................................. 12

**Other Authorities**

House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill,
   2006: Report Together with Additional Views (to accompany H.R. 2360), 109th
   Cong., 1st Session, 2005, H. Rep. .......................................................... 9

**Regulations**

6 C.F.R. § 115.14(a) ............................................................................... 8

vi

**PRELIMINARY STATEMENT**

Agents of the United States Government (the "Government" or "Defendant") forcibly separated Plaintiffs B.A.D.J. ("Belinda") and X.B.J.A. ("Xenia") pursuant to a policy devised by Defendant officials to take children away from migrant parents for the purpose of inflicting severe emotional harm.  Defendant crafted this policy believing word of its harms would reach future asylum seeking families, deterring them from emigrating to the United States lest they and their children meet the same fate.  As several courts have now opined, this policy was unconstitutional.  Defendant also lacked statutory authority to take children who were not "unaccompanied" from their parents.  Yet Defendant's agents proceeded with taking Xenia, a minor child, from her mother Belinda, and the two did not see each other again for over three years.

While the policy was unconstitutional, and therefore not within the discretion of the officers and agents who implemented and executed it, Plaintiffs are not pursuing claims to redress these constitutional violations.   Instead, Plaintiffs assert under the Federal Tort Claims Act ("FTCA") three tort claims that have analogues under Arizona law.  Specifically, Plaintiffs allege that Defendant's acts constitute intentional infliction of emotional distress ("IIED"), negligence, and loss of child's consortium.

Defendant seeks dismissal on several grounds, many of which were already twice rejected in its motions to dismiss two related cases in this District: *C.M. v. U.S.* and *A.P.F. v. U.S.*  Defendant fails to meet its burden to establish on the pleadings that an exception to FTCA jurisdiction applies.  Defendant's agents lacked the discretion to violate Plaintiffs' constitutional rights to family integrity and due process.  Nor did it have the statutory or regulatory authority—much less a mandate—to separate Plaintiffs.  Defendant's sole source of authority, besides the unconstitutional policy itself, is a human trafficking victim law that would have applied only if Xenia were unaccompanied.  And Defendant makes no attempt to argue its agents treated Plaintiffs with due care.  Under such circumstances, neither the Discretionary Function nor Due Care Exception applies.

Defendant also asserts that Plaintiffs' tort claims are barred because they seek to

redress constitutional violations.  Where Plaintiffs allege, however, that Defendant's agents violated tort duties, Defendant cannot convert Plaintiffs' Complaint into one asserting constitutional claims simply because Defendant also violated the Constitution.

Defendant's remaining arguments are similarly flawed.  There is no bar on "institutional" torts, and the Complaint pleads acts on the part of numerous individual Government officials and agents.  While Arizona disallowed claims that a caretaker negligently failed to stop its ward from committing a criminal offense, that bar would not reach allegations of tortious acts perpetrated by Government agents while Plaintiffs were in their care.  And the Complaint is replete with allegations of breaches of Defendant's duty of care to Plaintiffs during their detention.  Those alleged breaches were neither mandated by statute nor within Defendant's discretion.  The motion should be denied.

## **BACKGROUND**

Nearly three years ago, Plaintiffs Belinda and Xenia—a mother and her minor daughter—fled to the United States to seek asylum from a credible threat of violence in El Salvador.  *Compl*. ¶ 2.  Shortly after crossing the border, they were detained by federal officials, who almost immediately began threatening that Xenia would be taken from Belinda.  *Id*.  And in just a few days, those threats came true.  *Id*. ¶ 3.  After taking Xenia, federal agents provided Plaintiffs with no information about each other's whereabouts or wellbeing and prevented them from speaking for ten days.  *Id*. ¶ 5.  Belinda was not criminally charged or convicted for entering the country with Xenia. *Id.* at 25 n.73.

In separating Belinda and Xenia, federal agents were executing an unlawful policy intended to harm Plaintiffs and others like them on the theory that this would scare other families away from seeking asylum in the United States.  *Id*. ¶ 8.  Defendant's agents exacerbated the trauma of separation through inhumane treatment of Plaintiffs, depriving them of basic necessities.  *Id*. ¶ 11.  And agents leveraged Belinda's separation from her daughter to unlawfully coerce her to abandon her asylum claim.  *Id.* ¶¶ 124-43. Plaintiffs continue to suffer, physical, mental, and emotional harm because of the intentional, reckless, and negligent acts of Defendant's officials.  *Id*. ¶ 13.

## LEGAL STANDARD

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). *See C.M. v. U.S.*, 2020 WL 1698191, at *1 (D. Ariz. Mar. 30, 2020) *motion to certify appeal denied*, 2020 WL 5232560 (D. Ariz. July 6, 2020) ("'[A] facial attack . . . asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.'") (quotations omitted).  The Court must "accept[] the allegations of the complaint as true and afford[] plaintiffs the benefit of all favorable inferences that can be drawn from the alleged facts." *Id*.

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint's "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Zabriskie v. Fed. Nat'l Mortg. Ass'n,* 109 F. Supp. 3d 1178, 1181 (D. Ariz. 2014) (*quoting Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)).  "In determining whether an asserted claim can be sustained, '[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.'" *Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1154 (D. Ariz. 2019) (alteration in original) (internal citation omitted).

## ARGUMENT

## I.   Defendant Cannot Establish that the Discretionary Function Exception Bars Plaintiffs' Claims.

To invoke the Discretionary Function Exception ("DFE"), Defendant must show that its actions (1) involve an element of judgment or choice and (2) are based on considerations of public policy.  *U.S. v. Gaubert*, 499 U.S. 315, 322-23 (1991).  The burden is on the Defendant to prove that the DFE applies.  *Chadd v. U.S.*, 794 F.3d 1104, 1108 (9th Cir. 2015).  Where the alleged conduct "may have been non-discretionary" in light of the facts alleged in the Complaint, dismissal is improper.  *Nurse v. U.S.*, 226 F.3d 996, 1002 (9th Cir. 2000); *see Gaubert*, 499 U.S. at 322 (Government has no discretion to

1   violate the Constitution or federal statute or regulation).

2        Defendant fails to meet its burden to establish that the DFE applies here because

3   Defendant's separation of Plaintiffs "may have been" unconstitutional, and it is not within

4   the Defendant's discretion to violate the Constitution.  *See Nurse*, 226 F.3d at 1002 n.2

5   (holding that "the Constitution can limit the discretion of federal officials such that the

6   FTCA's discretionary function exception will not apply").  Even if the Defendant could

7   establish on the pleadings that the separations were not unconstitutional, it did not have

8   discretion to violate federal law by transferring Xenia to ORR when she was not

9   "unaccompanied."

10       **A.   Defendant Did Not Have Discretion to Violate the Constitution or**
        **Federal Mandates in Separating Belinda and Xenia.**
11

12       The DFE is inapplicable here because the separation of Belinda and Xenia violated

13  their constitutional rights to family integrity and due process, and the government does not

14  have the "discretion" to violate the Constitution.  *See Fazaga v. Fed. Bureau of*

15  *Investigation*, 916 F.3d 1202, 1250-51 (9th Cir. 2019) ("[T]he Constitution can limit the

16  discretion of federal officials such that the FTCA's [DFE] will not apply.") (*quoting*

17  *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004)).  At the pleading stage, it is improper to

18  dismiss a complaint under the DFE when the government's conduct "may have been"

19  unconstitutional in light of the alleged facts.  *Nurse,* 226 F.3d at 1002.

20       Courts have consistently held that claims arising from the government's separation

21  of families fall outside the scope of the DFE.  *See, e.g., C.M.*, 2020 WL 1698191, at *4,;

22  *A.P.F. v. U.S.*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020) ("Because government officials

23  lack discretion to violate the Constitution, the discretionary function exception cannot

24  shield conduct related to the government's likely unconstitutional separation of

25  plaintiff.").  These decisions apply here, as Defendant's policy violated the constitutional

26  right to family integrity of separated families, including Plaintiffs.  *Id.; see Jacinto-*

27  *Castanon de Nolasco v. U.S. Immigration and Customs Enf't*, 319 F. Supp. 491, 501

28  (D.D.C. 2018) (Government "directly and substantially burdened plaintiffs' right to

1    family integrity" when it "continued to detain Ms. Jacinto-Castanon and her sons in

2    separate facilities for many weeks with only periodic phone calls").

3        The DFE also does not shield the Government's deprivations of due process.  *See*

4    *Wong Wing Fai Co., S.A. v. U.S.*, 840 F.2d 1462, 1470 n.18 (9th Cir. 1988) ("Because the

5    [DFE] stems from an exemption to a waiver of sovereign immunity for tort claims, the

6    doctrine, when applicable, applies only to decisions alleged to be negligent, not those

7    alleged to be violative of due process.").  In a related suit on behalf of a class of migrant

8    parents including Plaintiff, the court found that the practice of separating families, and the

9    procedures used to implement this practice, likely violated the parents' due process rights.

10    *Ms. L. v. U.S. Immigration and Customs Enf't*, 310 F. Supp. 3d 1133, 1144–46 (S.D. Cal.

11    2018), *modified by* 330 F.R.D. 284 (S.D. Cal. 2019); Compl. ¶ 54.  The *Ms. L.* court

12    reasoned:  "A practice of this sort implemented in this way is likely to be so egregious, so

13    outrageous, that it may fairly be said to shock the contemporary conscience, interferes

14    with rights implicit in the concept of ordered liberty and is so brutal and offensive that it

15    does not comport with traditional ideas of fair play and decency."  *Id*. at 1145-46

16    (alteration in original) (internal citations and quotations omitted).

17        The allegations of the Complaint show that Belinda and Xenia were subjected to

18    violations of their constitutional rights to family integrity and due process.  They were

19    forcibly separated by Government agents who then kept them unaware of each other's

20    whereabouts for extended periods and did not let them speak to one another for ten days.

21    *Compl*. ¶¶ 68, 75, 105-113.  These allegations are materially identical to those at issue in

22    *C.M.*, *A.P.F.*, and *Ms. L.*  In this case, as in those, the allegations show that Defendant

23    violated the Constitution, or at least that its actions "may have been" unconstitutional.

24        Defendant attempts to distinguish this case from *C.M.* and *A.P.F.* by arguing the

25    plaintiffs in those cases "alleged plausible constitutional violations."  Mot. at 11.  This

26    assertion ignores the alleged facts of this case and assumes a burden that Plaintiffs do not

27    have.  Plaintiffs need not *plead* a plausible constitutional violation for Defendant's DFE

28    argument to fail.  *See Nurse*, 226 F.3d at 1002 (dismissal on DFE grounds reversed even

where the pleadings did not establish whether or not the policy-makers violated the Constitution nor which particular mandates were violated).[1]  As explained above, the alleged facts are consistent with a deprivation of Plaintiffs' family-integrity and due process rights.  There is no requirement that Plaintiffs use any magic words asserting that Defendant violated the Constitution, particularly where Plaintiffs do not assert causes of action under the Constitution.  And since it is Defendant's burden to establish the DFE, these factual allegations are sufficient for the Court to conclude that Defendant has not met its burden of showing that on the face of the pleadings the DFE should bar the claims.

Defendant's reliance on *Arita v. U.S.*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), is misplaced.  First, *Arita* was decided under the Fifth Circuit's interpretation that it is a plaintiff's burden to allege the DFE does not apply.  *See id.* at 684; *see also Spotts v. U.S.*, 613 F.3d 559, 569 (5th Cir. 2010) ("To state a claim under the FTCA, a plaintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply.").  In the Ninth Circuit, Defendant carries the burden of establishing the DFE, such that the defense only applies if apparent on the face of the complaint.  *See Bailey v. U.S.*, 623 F.3d 855, 859 (9th Cir. 2010) ("The [government] bears the burden of proving" that the discretionary function exception applies.); *see also Nurse*, 226 F.3d at 1002 (DFE not applied when allegations could not rule out constitutional violation).  Moreover, the plaintiff in *Arita* apparently did not raise—and the court did not address—that the Government lacked discretion to implement and execute the family separations policy in violation of the Constitution.  *See Arita*, 470 F. Supp. 3d at 686-87.  Thus, the *Arita* court did not even test whether the plaintiffs had sufficiently alleged facts raising potential constitutional violations to meet their pleading burden to rule out the DFE.  Finally, application of the DFE in *Arita* turned on the Government's purported prosecutorial discretion under the Zero Tolerance Memorandum.[2]  *Id.*  But Plaintiffs here have not pleaded that they were prosecuted, much

[1] In *Nurse*, the Ninth Circuit declined to establish a pleading standard for the DFE.  226 F.3d at 1002, n.2.

[2] Defendant contends that the *Arita* court "agreed" that "the family separation policy itself

1   less that they were separated pursuant to any exercise of prosecutorial judgment, which

2   Defendant implicitly acknowledges by arguing that Belinda was merely "amenable" to

3   prosecution.  Mot. at 8.  *Arita* is thus both legally and factually distinguishable.[3]

### B.   Even If the Government's Actions Were Not Unconstitutional, It Had No Discretion to Declare Xenia "Unaccompanied" or Send Her to ORR.

6       Defendant fails to identify statutory or regulatory authority to forcibly separate

7   Plaintiffs, and indeed it was unlawful to transfer Xenia to ORR custody when Belinda was

8   available to provide care and physical custody and was not criminally charged.  When

9   considering whether the DFE bars an FTCA claim, "[i]f the challenged action was made

10  under a mandatory duty, with no exercise of discretion, that is the end of the matter—the

11  federal government may be sued."  *Andreini v. U.S.*, 2017 WL 3895705 at *2 (N.D. Cal.

12  Sept. 6, 2017).  Defendant has no discretion to violate a federal statute or regulation.

13  *Gaubert*, 499 U.S. at 322.  Under under 6 U.S.C. § 279(g), Defendant could not designate

14  Xenia an "unaccompanied alien child" when a parent was available to care for her, and it

15  therefore lacked discretion under 8 U.S.C. 1232(b)(3)) to take Xenia from her mother to

16  be put in ORR's custody.

17      Defendant's motion argues that Plaintiffs' detention and the decision to place

18  Xenia in ORR custody, including ORR's child-welfare determinations, are discretionary,

19  policy-based decisions.  Mot. at 10-11.  But in light of the allegations that Belinda was not

20  criminally prosecuted and was available to care for her child, Defendant's agents had no

---

22  and its implementation by officers in the field are discretionary."  Mot. at 10.  But the
    quoted passage is the *Arita* court's summary of the Government's own argument, not the
23  court's words.  *See Arita*, 470 F. Supp. 3d at 686 ("The United States replies that…").
    While the *Arita* court "agree[d] with the United States" that the DFE applied, its reasoning
24  centered on prosecutorial judgment under the Zero Tolerance Memorandum, but did not
    conclude that separations other than the plaintiff's were necessarily discretionary.  *See id.*
25  [3] Defendant's citation to *Mejia- Mejia v. ICE*, does not support its contention that
26  prosecutorial discretion via Executive policy can create a DFE shield to FTCA claims, as
    *Mejia* addressed only whether *Bivens* claims could be expanded to raise constitutional
27  challenges to Executive powers "already subject to extensive Congressional action."  2019
    WL 4707150, at *5 (D.D.C. Sept. 26, 2019) (dismissing *Bivens* claim in part due to
28  separation of powers concerns).

discretion to take Xenia and transfer her to ORR.  *See* 8 U.S.C. § 1232(b)(1), (3) (HHS, and thus ORR, *only* has statutory authority for the custody and care of UACs). Defendant's citations to cases shielding decisions about where to house individual prisoners or to detain an individual migrant (*see id.* at 9 n.5) thus miss the mark because they presuppose discretion that Defendant never had.  Defendant cites no statute or regulation that required or even permitted asylum-seeking parents like Belinda to be separated and detained apart from their children when entering the United States together merely because the parent is "amenable to prosecution" but is not charged, convicted, and sentenced or otherwise unavailable to care for her child.

Defendant's only cited authority for housing a minor child away from her mother is the Trafficking Victims Protection Reauthorization Act ("TVPRA") and its implementing regulations, which Defendant argues gives it the discretion to make decisions how to house "unaccompanied alien children" ("UACs") and in the "best interests of the child."  Mot. at 10 (citing 8 U.S.C. 1232(c)(2)(A); 6 C.F.R. § 115.14(a)). But Xenia, having crossed into the United States together with her mother, was not alleged to have been unaccompanied, nor to have been a human trafficking victim subject to the TVPRA.  *See Ms. L.*, 310 F. Supp. 3d at 1139 (explaining that "true 'unaccompanied alien children'" are those who arrive at the border without their parents, not those "detained with their parents at the border and who were thereafter separated from their parents"); *C.M.*, 2020 WL 1698191, at *3 n.4 (rejecting Government's argument "that parents who are 'amenable to prosecution' under immigration statutes are 'unavailable to provide care or custody' to their children" requiring the children's transfer to ORR custody); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2 (children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants. . . are not true unaccompanied minors within the meaning of the" TVPRA).  Congress has rejected Defendant's theory that children apprehended by DHS in the company of their parents could be considered "unaccompanied" and placed in ORR custody when "their

1    welfare is not at issue."[4]  Because Xenia and Belinda arrived in the United States together,

2    Defendant lacked the discretion it argues is permitted under the TVPRA and, to the extent

3    it designated Xenia a UAC, violated the law because her mother was available to care for

4    her.  *See* 6 U.S.C. 279(g) (defining UAC as a child without lawful immigration status for

5    whom "no parent or legal guardian in the United States is available to provide care and

6    physical custody").

7           Not only would it have been unlawful to designate Xenia a UAC, the Complaint

8    does not contain any allegation that Defendant designated her as such.[5]  Defendant

9    nonetheless attempts to introduce its own facts, asserting that she was "rendered

10   unaccompanied due to her mother being amenable to criminal prosecution."  Mot. at 8.

11   This assertion relies on facts outside the pleadings that cannot be considered at this stage.

12   *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Moreover, Defendant has

13   no support for its contention that simply being amenable to prosecution renders a parent

14   unavailable to care for her child.  *See* Mot. at n.4.  In the only case it cites, *D.B. v.*

15   *Cardall*, the court declined to overturn ORR's determination under 6 U.S.C. 279(g) that a

16   parent was not "available to provide care" for her child, including because her home was

17   "not a safe and stable environment."   826 F.3d 721, 727, 734 (4th Cir. 2016).  In light of

18   those factual findings, reviewable only for "clear error," the court could not decide as a

19   matter of law that the child did not meet the definition of UAC.  *Id*. at 731, 734.  Nothing

20   in *Cardall* supports Defendant's view that being only "amenable to prosecution"—but not

21

22   [4] *See* House Comm. on Appropriations, Dep't of Homeland Sec. Appropriations Bill,
     2006: Report Together with Additional Views (to accompany H.R. 2360), 109th Cong.,

23   1st Session, 2005, H. Rep. 109-79 (expressing an expectation that the Government would
     release families, use alternatives to detention, or detain families together in appropriate

24   spaces).

25   [5] While the Complaint does not allege that Xenia was designated a UAC, it does allege
     that Defendant had a practice, including as documented in internal memos, of falsely

26   designating children as unaccompanied.  *Compl*. ¶¶ 38-42.  As alleged, this practice
     involved separating children from their parents and then declaring them "unaccompanied"

27   as a pretext to house them apart from their parents.  *Id*.  To the extent it is implied that
     Defendant deemed Xenia "unaccompanied," that designation was not in Defendant's

28   discretion.  Thus the TVPRA would not have been a basis for the separation.

charged, convicted, and incarcerated—would render Belinda "[un]available to provide care" such that Xenia may have been lawfully designated a UAC.  *See Compl*. at 25 n.73 (alleging that Belinda was not criminally charged for entering the country with Xenia).

Defendant finally argues that "once the government made the discretionary decision to detain Plaintiff in a secure detention facility" it was required under federal law and the *Flores* Agreement to place Xenia in ORR custody away from Belinda.  Mot. at 11, n.7.  But again this presupposes without citing any authority that Defendant had the discretion to detain Belinda in a "secure" facility when doing so may require separation of her minor child.  Defendant's conclusion that separation was then required is flawed.  The *Flores* court explained that the *Ms. L* injunction prohibiting family separations does not conflict with or require Defendant to violate the *Flores* Agreement.  *Flores v. Sessions*, 2018 WL 4945000, at *4 (C.D. Cal. July 9, 2018) (explaining that Defendant can detain families together in family facilities, release them on parole or bond, and that parents may waive their children's *Flores* rights).  Therefore, while there is no allegation that Defendant in fact designated Xenia a UAC, it lacked the authority to do so.  Taking Xenia from Belinda and sending her to ORR custody violated its statutory authority, which is limited to UACs.  8 U.S.C. § 1232(b)(1), (3).  Because Defendant acted in violation of statutes concerning UACs, the DFE is inapplicable.

**II.     No Statute or Regulation Mandated Separating Plaintiffs and Defendant Did Not Act with Due Care.**

Defendant does not show that the cited statutes and regulations involving detention decisions required the separation of Plaintiffs or that its agents acted with due care for Plaintiffs' rights.  The Due Care Exception bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  Courts in the Ninth Circuit use the two-part test set forth in *Welch v. U.S.*, 409 F.3d 646, 652 (4th Cir. 2005) to determine whether the Due Care Exception applies.  *See, e.g.,* *Ferguson v. U.S.*, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016).  First, Defendant

must show that the "statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow." *Welch*, 409 F.3d at 652.  Second, if a statute or regulation mandated an official's course of action, Defendant must show that the official "exercised due care in following the dictates of th[e] statute or regulation." *Id*.

Defendant's argument that the Due Care Exception shields it from liability for harms resulting from its family separation policy has now been twice rejected.  *C.M.*, 2020 WL 1698191, at *3; *A.P.F.*, 492 F. Supp. 3d at 996.  This argument should be rejected here for the same reasons, including that Defendant fails to identify any statute or regulation that mandated the separation of Plaintiffs upon their entry into the United States.  This failure is fatal to its argument that the exception applies.  *See*, *e.g.*, *Gonzalez v. U.S.*, 2013 WL 942363, at *3-4 (C.D. Cal. March 11, 2013) ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action," his claims were not barred by the Due Care Exception).  Defendant also makes no effort to show it acted with due care.

### A.    No Statute or Regulation Mandated Plaintiffs' Separation.

The Due Care Exception requires that government action be mandated, not merely authorized, by a statute or regulation.  *Welch*, 409 F.3d at 652.  In *Welch*, the Due Care Exception barred false imprisonment claims where a statute mandated the plaintiff's detention.  *Id.*  Courts in this District apply the same standard.[6] *See Ferguson*, 2016 WL 4793180, at *7  (applying Welch's two-part test); *Kwai Fun Wong v. Beebe*, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006) (same); *A.P.F.*, 492 F. Supp. 3d at 995; *C.M.*,

---

[6] Defendant's assertion that its actions need only be "authorized" by a statute or regulation relies on a misreading of *Borquez v. U.S.*, 773 F.2d 1050 (9th Cir. 1985).  *Borquez* upheld a grant of summary judgment over plaintiffs' challenge to the government's delegation of its responsibility to care and maintain property on a dam, reasoning that government "[l]iability for duties delegated pursuant to statute is forbidden."  *Id*. at 1052.  As explained in *A.P.F.*, the *Borquez* plaintiffs' direct challenge to the government's statutory authority to delegate the entirety of its care and maintenance responsibilities is a particular type of challenge that the exception intended to prohibit.  *A.P.F.*, 492 F. Supp. 3d at 995, n.2.  By contrast, the families in *A.P.F.*, like here, are not challenging a statute's grant of authority to delegate the Government's responsibility (and thus liability), and are not challenging any statute at all.  *Id*.

1  2020 WL 1698191at *3.

2          The Defendant cites no statute or regulation requiring the separate detention of

3  Plaintiffs.  Rather, the Government points to statutes that simply give the Government the

4  "authority"—or *allow* it—to determine "where to detain Plaintiff" and to "to place her

5  minor child in the custody and care of ORR while she was securely detained."  Mot. 13.

6  None of the statutes cited by Defendant mandate the course of action that caused

7  Plaintiffs' harm—forcibly removing children from their parents' custody.  The

8  Government merely cites its ability to "determine whether and where to detain Plaintiff

9  after she entered the country without authorization, *see* 8 U.S.C. §§ 1225, 1226(a),

10  1231(g)(1), as well as the authority (indeed, an obligation under the TVPRA) to place her

11  minor child in the custody and care of ORR while she was securely detained, *see* 8 U.S.C.

12  §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g)."  Mot. at 13.  The ability to determine

13  placement is not a mandate to forcibly remove children from their parents' custody.

14          Defendant's only assertion that it had any "obligation" to separate Plaintiffs is

15  under the TVPRA, which it argues required it to place Xenia in ORR custody.  *Id*.  As

16  stated above in Section I.B., Defendant has not established—nor can it do so at this stage

17  of the proceedings—that it even applied the TVPRA when it chose to separate Xenia from

18  her mother or that Xenia was considered an unaccompanied minor such that the TVPRA

19  could have applied at all.  Indeed, the Defendant's Motion acknowledges that Xenia may

20  not have been an unaccompanied minor and thus subject to the TVPRA, arguing instead

21  that *Flores* would have eventually required separation in the event the Government

22  exercised its discretion to hold Plaintiff.[7]  *Id*. n.10.  Implicit in this acknowledgement of

23  _____

24  [7] The Complaint, read in the light most favorable to Plaintiffs, does not support an
   argument that Xenia was an unaccompanied minor.  As alleged, she and Belinda crossed

25  the border together.  *Compl*. ¶ 88.  And Xenia's father was in the United States and
   available to care for her upon release.  *Id*. ¶ 121.  So even though Defendant had a history

26  of designating accompanied children as unaccompanied, any such designation as to Xenia
   would have been false.  *See* 8 U.S.C. § 1232(g); 6 U.S.C. § 279 (defining "unaccompanied

27  alien child" to include minors without lawful immigration status for whom "(i) there is no
   parent or legal guardian in the United States; or (ii) no parent or legal guardian in the

28  United States is available to provide care and physical custody").

"discretion" is Defendant's concession that there was no "statute or regulation" that mandated the separation but that it resulted from Defendant's prior acts.

Indeed, no statute required Defendant to separate Xenia from Belinda.  As recently stated in *A.P.F.*, "the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation."  492 F. Supp. 3d at 995-996.  Actions pursuant to executive orders and directives are not protected by the Due Care Exception.  *See* 28 U.S.C. § 2680(a) (government employees must be acting "in the execution of a statute or regulation").  As alleged, Defendant separated Plaintiffs pursuant to nothing more than its policy to inflict emotional distress upon Plaintiffs and other migrants with the goal of deterring future asylum seekers.  *Compl.* ¶¶ 8, 31, 37, 49-51, 158.  The Due Care Exception does not apply where a policy, rather than a statute or regulation, mandated the conduct at issue.  *Garcia-Feliciano v. U.S.*, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (*citing Welch*, 409 F.3d at 652) (The Due Care Exception "would not apply here . . . because a policy—not a statute or regulation—pr[e]scribed the deputy's conduct").

### B.    The Separation of Children from Their Parents at the Hands of Government Agents Was Done Without Due Care.

Even if the Government had met the first prong of the Due Care Exception, it must still show that it acted with "due care."  *Welch*, 409 F.3d at 652.  Defendant does not even reference the second prong of the Due Care Exception, much less explain how the allegations of the Complaint show that it acted with due care.  By failing to establish a required element of the Due Care Exception, the Government waives the exception.  *See Save the Peaks Coal. v. U.S. Forest Serv.*, 2010 WL 3800896, at *2 (D. Ariz. Sept. 22, 2010) (arguments not raised in opening brief are waived).

"Due care" under § 2680(a) "implies at least some minimal concern for the rights of others."  *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (*quoting Hatahley v. U.S.*, 351 U.S. 173, 181 (1956)).  The Government did not act with even minimal concern for others in separating Belinda and Xenia.  *See Compl.* ¶¶ 93, 94, 106, 112.  Defendant's officers subjected Plaintiffs to inhumane treatment.  *See id.* ¶¶ 2-5,

1    96.  Plaintiffs were detained in freezing cells with little space to sleep, insufficient food

2    and water, and without meeting sanitary and medical needs.  *Id.* ¶¶ 91, 98-103.  Plaintiffs

3    were threatened and taunted about their impending separation, including forcing Belinda

4    to watch the separations of other children from their families.  *Id.* ¶ 91.  Belinda was

5    deprived of information about her daughter's whereabouts or safety.  *Id.* ¶ 113.  She

6    experienced a prolonged detention without proper care for her deteriorating health.  *Id.* ¶¶

7    124-128, 133, 136-139.  These allegations show Defendant's failure to act with "at least

8    some minimal concern for the rights of others."  *Myers & Myers, Inc.*, 527 F.2d at 1262.

9    **III.    Plaintiff's Tort Claims Satisfy the Broad Private Analog Inquiry.**

10           Plaintiffs establish subject-matter jurisdiction under the FTCA by showing that "a

11   private individual under like circumstances would be liable under state law."  *U.S. v.*

12   *Muniz*, 374 U.S. 150, 153 (1963); 28 U.S.C. § 1346(b).  Plaintiffs do so here by alleging

13   claims for IIED, negligence, and loss of child's consortium, each of which would apply to

14   private actors under Arizona law.  The private analog doctrine—which holds the

15   Government liable "in the same manner and to the same extent as a private individual

16   under like circumstances," 28 U.S.C. § 2674—must be interpreted broadly.  *Indian*

17   *Towing Co. v. U.S.*, 350 U.S. 61 (1955).  Because the Government "'could never be

18   exactly like a private actor,' [courts need only] 'find the most reasonable analogy' to

19   private, tortious conduct."  *A.P.F.*, 492 F. Supp. 3d at 994 (quoting *Dugard v. U.S.*, 835

20   F.3d 915, 919 (9th Cir. 2016)).  FTCA claims may proceed even as to immigration

21   officers' uniquely governmental acts.  *See Xue Lu v. Powell*, 621 F.3d 944, 947-50 (9th

22   Cir. 2010).

23           The Government contends that it has "not waived its sovereign immunity for such

24   decisions because only the Federal Government has the authority to enforce federal law

25   and make determinations concerning the detention of noncitizens."  Mot. 14.  But it is

26   well-settled that the government can be liable for activities over which the federal

27   Government has exclusive authority.  *See Indian Towing*, 350 U.S. at 69-70 (Government

28   could be liable for Coast Guard's failure to maintain a lighthouse despite its exclusive

1   authority over such operations); *see also Muniz*, 374 U.S. at 159-62, 165-66 (negligence

2   actions allowed to proceed even though confinement of inmates is a uniquely

3   governmental function); *Tekle v. U.S.*, 511 F.3d 839, 852 (9th Cir. 2007) ("[e]ven if the

4   conduct entails uniquely governmental functions, the court is to examine the liability of

5   private persons in analogous situations," like false imprisonment).

6        Belinda and Xenia's injuries arise from their separation at the hands of

7   Government officials. *See, e.g.*, Compl. ¶¶ 1, 15,112, 113, 116-118, 121.  Private

8   individuals have been held liable in Arizona for IIED, negligence, and loss of child's

9   consortium under reasonably similar circumstances, including in nearly identical facts in

10   *C.M.*, 2020 WL 1698191 at *2, and *A.P.F.*, 492 F. Supp. 3d at 994-95.  *See, e.g., id*.;

11   *Pankratz v. Willis*, 155 Ariz. 8, 10, 22 (Ct. App. 1987) (upholding IIED verdict in favor of

12   parent whose in-laws facilitated and concealed the disappearance of parent's child);

13   *Martinez v. U.S.*, 2018 WL 3359562, at *11 (D. Ariz. July 10, 2018) (denying

14   Government's summary judgment motion on IIED claim against CBP agents where those

15   agents separated a family, threatened incarceration, and offered to release the plaintiff's

16   children if he confessed); *Estate of Smith v. Shartle*, 2020 WL 1158552, at *1 (D. Ariz.

17   Mar. 10, 2020) (recognizing viability of negligence claim brought under FTCA where

18   plaintiffs alleged federal employees' placement of a prisoner in a certain cell was

19   negligent).  Plaintiffs' IIED claim mirrors Arizona law based on "ample factual

20   allegations suggesting that the government's separation of families was motivated by

21   malice." *C.M.*, 2020 WL 1698191 at *2; *see, e.g.*, *Compl*. ¶¶ 5, 15, 74, 79-86, 169, 194,

22   263-64.

23        Arizona law also recognizes that private persons owe a duty of care when acting in

24   a supervisory capacity analogous to the Government's supervision of Plaintiffs here. *See,*

25   *e.g., Sanders v. Alger*, 242 Ariz. 246, 249 (2017) (a caregiver owes a duty of reasonable

26   care to their patients); *Broadbent by Broadbent v. Broadbent*, 184 Ariz. 74, 81 (1995)

27   (parents owe a duty of care to their children); *Hill v. Safford Unified Sch. Dist.*, 191 Ariz.

28   110, 112 ( Ct. App. 1997) (schools have a duty not to subject students to risk of harm).

Given these duties under Arizona law, Defendant's agents also had a duty not to negligently harm Plaintiffs while in Government custody.  Their failure to do so supports a negligence claim under the FTCA.  And Arizona law permits damages for the loss of a child's consortium when a caretaker's actions caused "significant interference with the normal relationship between parent and child." *Bickler v. Senior Lifestyle Corp.* 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010).

The Government relies on a 1988 Second Circuit decision, *Akutowicz v. U.S.*, 859 F.2d 1122 (2d Cir. 1988), for the premise that decisions to detain individuals are "quasi-adjudicative Actions" with no private analogue.  Mot. 16.  *Akutowicz* involved the revocation of the plaintiff's citizenship, explaining that such "quasi-legislative or quasi-adjudicative action by an agency of the Federal Government is action of the type that private persons could not engage in and hence could not be liable for under local law." 859 F.2d at 1125 (quoting *C.P. Chemical Co. v. U.S.*, 810 F.2d 34, 38 (2d Cir. 1987)). But detention decisions are distinguishable from a revocation of citizenship.  The Second Circuit in *Liranzo* clarified this distinction and rejected an extension of *Akutowicz* to an immigration-related false arrest claim: "But in *Akutowicz*, there was no detention.  The only action complained of was the removal of plaintiff's citizenship.  Citizenship is a legal status, which only the federal government is capable of altering.  A private individual cannot . . . cause injury to another's citizenship.  But a private person is of course capable of falsely arresting another." *Liranzo v. U.S.*, 690 F.3d 78, 96 (2d Cir. 2012).  Like in *Liranzo*, Plaintiffs here are not challenging a revocation of their citizenship.  Instead, Defendant violated duties that would also apply to private persons under Arizona law if they mistreated and separated family members within their care.

The out-of-circuit authorities Defendant cites are inapposite as assessing a private analog of "wrongful confinement," which is not at issue here.  Mot. 16.  *McGowan v. U.S.* involved a false imprisonment claim based on solitary confinement that the plaintiff analogized to the New York tort of wrongful confinement.  825 F.3d 118, 126 (2d Cir. 2016).  The court found that the Government's ability to impose solitary confinement

1    could not be analogized to a private person committing false imprisonment.  *Id*.  And

2    *Buzzanca v. D.C.* and *Portillo v. U.S.* considered alleged miscalculations of the plaintiffs'

3    time incarcerated.  523 F. Supp. 3d 64 (2021); 2018 WL 523363 (D. Nev. Jan. 22, 2018).

4         Here, Plaintiffs do not assert false imprisonment resulting from wrongful detention,

5    but rather that the intentional and negligent execution of their separation satisfied the

6    elements of IIED, negligence, and loss of child consortium claims.  Courts within this

7    Circuit permit tort claims that arise during detention but do not challenge the fact of

8    detention itself.  See *Martinez*, 2018 WL 3359562, at *11 (denying Government's

9    summary judgment motion on IIED claim against CBP agents where those agents

10   separated a family, threatened incarceration, and offered to release the plaintiff's children

11   if he confessed); *see also Estate of Smith*, 2020 WL 1158552, at *1 (recognizing viability

12   of negligence claim brought under FTCA where plaintiffs alleged federal employees'

13   placement of a prisoner in a certain cell was negligent).  The simple fact that the Plaintiffs

14   were in detention when Defendant harmed them does not obviate any private person

15   analogue based on those acts.  Private persons can be found liable for intentional or

16   negligent tortious conduct while, like here, someone is in their care.

17   **IV.   Plaintiffs' Tort Claims Are Not Barred Merely Because Defendant's Tortious**
     **Conduct Also Happened to Infringe Plaintiffs' Constitutional Rights.**
18

19        Plaintiffs' claims—IIED, negligence, and loss of consortium—are tort claims, not

20   constitutional claims, such as a *Bivens* claim or other civil rights claim for violation of due

21   process or other constitutional rights.  The claims asserted in the Complaint allege that

22   Defendant violated its tort duties, causing Plaintiffs harm.  The fact that Defendant's

23   tortious conduct also violated the Constitution does not somehow convert Plaintiffs'

24   claims into "constitutional torts" that cannot be brought under the FTCA.  As held in *C.M.*

25   and *A.P.F.*, Defendant cannot "re-categorize" Plaintiffs' allegations about poor conditions

26   as standalone claims and then call them impermissible constitutional torts.  *See C.M.*,

27   2020 WL 1698191 at *4, n.5;  *A.P.F.*, 492 F. Supp. 3d at 996-97.

28        The Government's reliance on *FDIC v. Meyer*, 510 U.S. 471 (1994), is inapposite.

1    *Meyer* held that the plaintiff's *Bivens* claim is a "constitutional tort" not cognizable under

2    the FTCA such that the FTCA does not provide the exclusive remedy.  *Id.* at 477-78.  The

3    Court reasoned that a *Bivens* claim, in seeking to redress a constitutional violation, lacks a

4    state-law analogue because it arises from the U.S. Constitution.  *Id.* at 478.   Plaintiffs

5    here, by contrast, assert no *Bivens* claim or other constitutional claim, relying instead on

6    three tort violations with analogues under Arizona law.

7            Despite the absence of constitutional claims in the Complaint, Defendant styles

8    Plaintiffs' allegations as to their inhumane treatment during detention as a "constitutional

9    attack" on the conditions of their confinement.  Mot. 17.  The cases Defendant cites for

10   this proposition are distinguishable.  In *Aguilar*, the scope of the plaintiff's IIED claim

11   was limited to constitutional allegations regarding "general conditions, practices, rules, or

12   restrictions of pretrial confinement." *Aguilar v. U.S.,* 2017 WL 6034652, at *4 (S.D. Tex.

13   June 7, 2017).  Relying on Fifth Circuit precedent, the court found that the "basis of" the

14   plaintiff's claims were complaints about pretrial confinement conditions and thus a *Bivens*

15   action was the appropriate form of the claim.  *Id.* (citing *Cook v. Tex. Dep't of Crim.*

16   *Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994)).   In contrast to

17   *Aguilar*, where the claims were based entirely on poor conditions, Plaintiffs' allegations

18   are based on Defendant's unlawful separation of families, including the tortious acts of

19   Government agents during their detention.  Plaintiffs have not asserted any claim based

20   solely on the poor condition of the detention centers that constitutes a veiled constitutional

21   attack.  *C.f. Thompson v. U.S.*, 2015 WL 5567934, *2 (M.D. Pa. Sept. 21, 2015)

22   (prisoner's sole claim was the denial of his right to petition the courts); *Sutter v. U.S.*,

23   2019 WL 1841905, at *4 (C.D. Cal. Mar. 12, 2019) (in addition to his *Bivens* claim, the

24   federal prisoner also asserted specific constitutional violations refashioned as "negligent

25   failure to protect" claims).

26           While pure constitutional claims cannot be brought under the FTCA, tort claims

27   routinely proceed under the FTCA despite simultaneous constitutional violations.  *See*

28   *e.g.*, *Nurse*, 226 F.3d at 1002 (FTCA claim based on the Government's promulgation of

1   discriminatory, potentially unconstitutional policies, can proceed past the motion to

2   dismiss stage); *Raz v. U.S.*, 343 F.3d 945, 948 (8th Cir. 2003) (plaintiff's tort claims

3   involving 1st and 4th Amendment violations may proceed); *Prisco v. Talty*, 993 F.2d 21,

4   26 n.14 (3d. Cir. 1993) (similar); *Limone v. U.S.*, 579 F.3d 79, 102 n.13 (1st Cir. 2009)

5   ("[W]e do not view the FBI's constitutional transgressions as corresponding to the

6   plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims").

7   **V.   Plaintiffs Allege Tortious Actions of Individual Government Employees and
        Do Not Rely Only on Institutional Acts of the Government As a Whole.**

8

9       The FTCA provides a waiver of the United States Government's sovereign

10  immunity for tort claims arising out of the conduct of Government employees acting

11  within the scope of their employment.  28 U.S.C. § 1346(b)(1); *U.S. v. Orleans*, 425 U.S.

12  807, 813–14 (1976).  The FTCA defines "government employee" to include "persons

13  acting on behalf of a federal agency in an official capacity."  *See* 28 U.S.C. § 2671.

14  Defendant asserts based on a single outlier case that there is an additional pleading-stage

15  bar to FTCA claims alleging "institutional or 'systemic' tort claims" against the

16  Government that fail to identify particular officials and their individual tortious acts.  Mot.

17  at 18-19 (citing *Lee v. U.S.*, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020).  Even if there

18  were such a pleading requirement—there is not—Plaintiffs identify ample allegations of

19  Government agents and officials devising, promulgating, and executing Defendant's

20  separations policy causing harm to Plaintiffs.

21      Defendant misconstrues *Lee*, in which the complaint alleged that numerous federal

22  agents "collectively failed" to enforce federal suicide prevention regulations or train

23  corrections staff on the regulations, purportedly contributing to the prisoner's suicide.

24  2020 WL 6573258 at *5.  The court found these allegations too vague to identify whether

25  *any* federal employee was negligent or how their act or omission allegedly caused the

26  prisoner's death, and ruled that the plaintiff simply failed to meet the minimum notice-

27  pleadings standard to state an underlying negligence claim against any federal employees.

28  *Id*. at *6.  *Lee* did not hold, as Defendant contends, that an FTCA claim is insufficiently

pleaded if the federal employees are "unidentified" or if "officials of many different federal agencies" are involved in the tortious acts.  Mot. at 18.  Indeed, the opinion's only mention of the propriety of asserting "institutional negligence" or the conduct of the Government "as a whole" is the court's summary of the defendant's argument.  *Id.* at *5. *Lee* merely shows that, as with any negligence claim, an FTCA plaintiff must allege facts indicating that the elements of the underlying tort are met.[8]

Plaintiffs do not allege that the "institution" of the Government harmed them, but set forth acts attributable to Government agents and officials, both at the policy level and in executing that policy, causing actionable harm to Plaintiffs.  Plaintiffs allege numerous decisions by Defendant's agents and officials regarding implementation of the family separation policy: DHS officials considered a policy of separating parents with children arriving at the U.S.-Mexico border as a means of deterring asylum seekers (*Compl*. ¶ 33); U.S. Government officials at the highest levels, including the Assistant Secretary, knew of the trauma to children and parents that the policy would cause and embraced that result, believing that publicity about the harms would deter asylum-seeking families from immigrating to the United States (*id*. ¶¶ 37, 51); and CBP agents targeted parents who crossed the border with children. *Id*. ¶ 38.  Individual agents frequently insulted, threatened, and taunted parents including Belinda during or after the process of taking their children from them and carried out the separations.  *Id*. ¶¶ 77, 93, 106-12.  The Complaint contains sufficient detail that Defendant's agents tortiously harmed Plaintiffs.

## VI.   Arizona Law Does Not Shield Defendant's Independently Tortious Acts

Relying on *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017), Defendant insists Plaintiffs' IIED and negligence claims are barred by Arizona law

---

[8] In *Lee*, the plaintiff separately sought to assert a direct negligence claim against the government and an FTCA claim against the Bureau of Indian Affairs.  2020 WL 6573258 at *5.  The court dismissed these claims because there is no waiver of immunity for direct tort claims and the FTCA does not permit suit naming an agency.  *Id.*  These jurisdictional grounds for dismissal do not indicate that the United States cannot be sued for multiple or even collective tortious acts of its employees and agents so long as the elements of the underlying claims are met.

because they stem from "lawful incarceration" and would undermine public policy of "accountability for criminal behavior."  Mot. at 19.  There is no analogy to the plaintiff in *Muscat*—a convicted sex offender who, while in the custody of a probationary group home, sexually assaulted another child and then sued the group home for negligence for allegedly failing its supervisory duty to prevent him from perpetrating the assault.  244 Ariz. at 198.  There, the issue was whether "a custodian may be found liable for negligence based solely on consequences that flow from the ward's commission of a crime."  *Id*.  Plaintiffs here are not criminals, nor are they seeking redress from harms that resulting from a criminal offense they perpetrated while in Defendant's custody for which they now want to blame Defendant.  *Muscat* is plainly inapposite.

## VII.   Plaintiffs Allege the Elements of a Negligence Claim.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements:  "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 214 Ariz. 141, 143 (Ariz. 2007).  Defendant argues that Plaintiffs do not allege that Arizona law imposes a duty of ordinary care and that Plaintiffs fail to allege negligence on the part of any particular federal employee.  Mot. at 20-21.  As explained above in Section III, there is a private analog for negligence under Arizona law, including the existence of a duty of ordinary care.  *See, e.g., Sanders*, 242 Ariz. at 249.  Plaintiffs have plausibly alleged that Defendant owed them a duty of care; that it breached this duty; and that as a direct and proximate cause of this breach, Plaintiffs have suffered substantial damages.  *Compl.* ¶¶ 59-62, 105-120, 148-55, 157, 167-69.  These allegations state a claim for negligence.  *See DeMontiney v. Desert Manor Convalescent Ctr. Inc.*, 144 Ariz. 6, 11 (1985) (Arizona law imposes duty where a person "takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" (quoting Restatement of Torts 2d)); *see also A.P.F.* 492 F. Supp. 3d. at 999 (finding a claim of negligence to be sufficiently plead in a similar case

involving family separation); *C.M.,* 2020 WL 1698191 *2) ("Federal immigration officials, too, are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care.").  As explained above in Section V, Defendant has identified no requirement under the FTCA that Plaintiffs identify the individual employees that allegedly harmed them, and, in any event, Plaintiffs have set forth detailed allegations of Defendant officials and agents responsible for devising and executing the separations policy, including the individual agents that carried out the separation of Belinda and Xenia.  *Supra* Section V.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.[9]

Respectfully submitted March 16, 2022

PERKINS COIE LLP

By */s/ Joel W. Nomkin* with permission
Joel W. Nomkin
Christopher D. Thomas
Austin Yost

O'MELVENY & MYERS LLP

By */s/David Almeling*
David Almeling*
R. Collins Kilgore*
Vanessa Guerrero*

[*Admitted pro hac vice]

---

[9] Plaintiffs have a currently pending motion for leave to file five excess pages in support of this brief.  *See* ECF No. 41.  The Court granted Defendants' motion to file five excess pages in support of its Motion.  *See* ECF No. 26.