NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B.A.D.J., | No. CV-21-00215-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, | |
| Defendant. | |

Pending before the Court is the Defendant United States of America's ("Government") Motion to Dismiss ("MTD"). (Doc. 27.) The MTD is fully briefed, (*see* Docs. 42, 46), and the Court held oral argument on August 22, 2022. Having considered the parties' briefing and arguments, as well as the relevant law, the Court will deny in part and grant in part the Government's MTD for the following reasons.

**I.  BACKGROUND**

B.A.D.J. brings this action on behalf of herself and her minor child, X.B.J.A., (collectively "Plaintiffs") against the Government, under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680. Plaintiffs seek damages based on their detention and separation. (Doc. 1 at 5.)

In May of 2018, B.A.D.J. and X.B.J.A. illegally crossed[1] the United States' southern border near San Luis, Arizona. (Docs. 1 at 26, 27 at 5.) United States Customs and Border

---

[1] *See* 8 U.S.C. § 1325(a) (it is unlawful to enter the United States "at any time or place other than as designated by immigration officers").

Protection ("CBP") apprehended Plaintiffs almost immediately. (Doc. 1 at 26.) CBP transported Plaintiffs to a nearby detention facility. (*Id.* at 7.) A few days later, CBP transferred X.B.J.A., as an unaccompanied alien child, to a Department of Health and Human Services Office of Refugee Resettlement ("ORR") facility in Florida, where she spent two weeks before being released to her father's custody. (*Id.* at 29–30 ¶¶ 112–23; Doc. 27 at 5.)

CBP eventually transferred B.A.D.J. to an Immigration and Customs Enforcement ("ICE") facility in Ocilla, Georgia. (Doc. 1 at 31 ¶ 125.) Although B.A.D.J. was never prosecuted, an immigration judge denied her bond in November 2018; B.A.D.J. signed her removal order and was deported to El Salvador. (*Id.* ¶¶ 141–43.) Within weeks of her deportation, B.A.D.J. again unlawfully entered the United States and was apprehended by CBP. (*Id.* ¶¶ 144–45.) She was again deported to El Salvador, where she remained as of the filing of the Complaint. (*Id.* ¶¶ 145, 147.)

Plaintiffs claim that the Government's actions constitute intentional infliction of emotional distress ("IIED"), negligence, and loss of child's consortium. (Doc. 42 at 8.) Notably, although Plaintiffs contend that the Government's policy—separating children from parents who illegally crossed the border—was unconstitutional, (Doc. 1 at 24), Plaintiffs clarify that they "are not pursuing claims to redress these constitutional violations." (Doc. 42 at 8.) The Government moves to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), with the bulk of the Government's arguments focusing on this Court's purported lack of jurisdiction. (*See generally* Doc. 27.)

**II.     LEGAL STANDARD**

Rule 12(b)(1) permits motions to dismiss for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts may only hear cases as authorized by Congress or the Constitution. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs bear the burden of establishing the Court's subject matter jurisdiction, and the Court must dismiss the action if Plaintiffs fail to do so. *See id.*; *see also* Fed. R. Civ. P. 12(h)(3). "Because subject-matter jurisdiction involves a court's power to hear a case, it

can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

"Ordinarily, a court cannot issue a ruling on the merits when it has no jurisdiction because to do so is, by very definition, for a court to act ultra vires." *Brownback v. King*, 141 S. Ct. 740, 749 (2021) (cleaned up). A Court must therefore decide jurisdictional motions—such as one brought under 12(b)(1)—before others. *See Orient v. Linus Pauling Inst. of Sci. and Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996). Moreover, in determining jurisdictional facts, the Court is not limited to the face of the pleadings. *See Green v. United States*, 630 F.3d 1245, 1248 (9th Cir. 2011) ("On a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion.").

## III.  DISCUSSION

The Government asserts six theories for why the Court lacks subject matter jurisdiction: (1) Plaintiffs' claims are barred by the FTCA's discretionary function exception; (2) Plaintiffs' claims are barred by the FTCA's due care exception; (3) there is no private analogue for Plaintiffs' claims; (4) the FTCA does not authorize recovery for constitutional torts; (5) the FTCA does not permit institutional torts; and (6) Plaintiffs' claims are barred because they arise from B.A.D.J.'s lawful detention and are therefore not actionable under Arizona law. The Court will address each theory in turn.

### A. Discretionary Function Exception

The Government argues it is immune from suit under the discretionary function exception to the FTCA. Plaintiffs assert for the first time in their response that the exception is inapplicable because the Government had no discretion to violate the Constitution or federal law. Plaintiffs also assert the Government had no discretion to transfer X.B.J.A. to the ORR facility because CBP's internal policy sought to "maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation." (Doc. 1 at 9 n.7.)

As the sovereign, the United States is immune from suit and "can be sued only to

the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). Absent such a waiver, sovereign immunity bars a suit against the Government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994). The FTCA waives sovereign immunity for certain common law tort claims. *See* 28 U.S.C. § 2674. However, "[t]he liability of the United States under the FTCA is subject to the various exceptions contained in § 2680, including the 'discretionary function' exception at issue here." *United States v. Gaubert*, 499 U.S. 315, 322 (1991).

The discretionary function exception bars any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has held that this exception applies when the government's actions (1) involve an element of judgment or choice and (2) are based on considerations of public policy. *Gaubert*, 499 U.S. at 322–23. "The plaintiff has the burden of showing there are genuine issues of material fact as to whether the [discretional function] exception should apply, but the government bears the ultimate burden of establishing that the exception applies." *Green*, 630 F.3d at 1248–49.

The Government's implementation of the zero tolerance and family separation policy ("Zero Tolerance Policy") was an ordinary exercise of prosecutorial discretion. *See Peña Arita v. United States*, 470 F.Supp.3d 663, 686–87 (S.D. Tex. 2020) (whether to prosecute and the priority of prosecutorial decisions are "obviously grounded in considerations of public policy" and "intended to be shielded by the discretionary function exception"); *see also Shivers v. United States*, 1 F.4th 924, 929 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1361 (2022) (classification and housing of prisoners are discretionary functions or duties). The Supreme Court has repeatedly recognized the executive branch's broad discretion over prosecutorial decisions in the criminal context. *See, e.g.*, *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). That discretion applies equally, if not more, in the deportation context.

Under the Zero Tolerance Policy, the Government endeavored to enforce

immigration laws by prosecuting all illegal entrants. Both parties agree B.A.D.J. was amendable to prosecution, and the Department of Justice acted within its authority to detain her for prosecution or removal.[2] The Government entered into a settlement agreement that precludes the Government from detaining minors in secure detention facilities ("Flores Agreement"), absent circumstances not alleged here. *See Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016). The Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Id.* Under the Flores Agreement, "[DHS] must transfer the minor to a non-secure, licensed facility." *Id.* at 902–03.[3] Once the Government exercised its discretion to detain B.A.D.J. in a secure detention facility, current law did not permit X.B.J.A. to remain with her mother. The Court therefore finds that both *Gaubert* factors are met because the Government's actions or omissions involved an element of discretion (detaining B.A.D.J. in a secured detention facility) based entirely on considerations of public policy (enforcement of federal immigration law). *See* 499 U.S. at 322–23.

In their response, Plaintiffs argue the Government "lacked the discretion to violate Plaintiffs' constitutional rights to family integrity and due process." (Doc. 46 at 8.) The Ninth Circuit has held the discretionary function exception does not protect unconstitutional governmental conduct, reasoning that government officials have no discretion to violate the constitution. *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000). Thus, if plaintiffs plausibly allege constitutional violations, then the

---

[2] At oral argument, Plaintiffs' counsel asserted the Government had two limited options—either (1) detain mother and daughter together, or (2) release them. Plaintiffs' counsel cited no law, nor has the Court found any, to support that proposition. The Court is similarly without legal support for Plaintiffs' assertion that before the Zero Tolerance Policy, the Government had always done it that way. Plaintiffs' assertions highlight the discretionary nature of the policy.

[3] Plaintiffs' argument that the Trafficking Victims Protection Reauthorization Act prevented the Government from designating X.B.J.A. an unaccompanied minor lacks merit. The Flores Agreement precludes minors like X.B.J.A. from being detained in secure detention facilities. The Government acted within its authority when it detained B.A.D.J. in such a facility, and it logically follows that X.B.J.A. could not be held with her mother.

discretionary function exception is inapplicable. *See id.*

Only one constitutional violation is described in the Complaint. Plaintiffs allege the Government's conduct violated procedural due process by "coercing parents like [B.A.D.J.] to abandon their asylum claims." (Doc. 1 at 24 ¶ 79.) Plaintiffs allege the Government misrepresented to parents that they needed to abandon their asylum claims to reunify with their children. (*Id.* ¶ 78.) This lone allegation is sufficient to satisfy *Nurse*'s limited holding. 226 F.3d at 1002 n.2 ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). Because Plaintiffs plausibly alleged that the Government's separation policy may have violated their due process rights, the discretionary function exception does not apply.

The Court recognizes and follows, but disagrees with, the standard in *Nurse*. Ninth Circuit caselaw burdens the Government—as the defendant—with establishing the validity of the discretionary function exception. Yet, plaintiffs are permitted to effectively eliminate that exception by alleging constitutional violations. The FTCA and its exceptions represent Congress's express waiver of sovereign immunity. Allegations of constitutional violations should not erase the statutory exceptions authored by and for the sovereign itself. *See Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019) ("[U]nless § 2680(a) is to be drained of its meaning, it must apply to discretionary acts that are tortious."). Constitutional violations are best reserved and analyzed under *Bivens* and its progeny. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "The inquiry is not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one." *Shivers*, 1 F.4th at 931. (11th Cir. 2021).

**B. Due Care Exception**

The Government next argues that the due care exception to the FTCA also forecloses Plaintiffs' claims. Plaintiffs respond that there is no statute mandating the Government's actions here, and even if there were, the Government did not take due care.

The due care exception—like the discretionary function exception—is based in the

FTCA and bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a).  Courts in this Circuit follow the two-prong test established by *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), to determine whether the due care exception applies.  *See, e.g.*, *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *4 (D. Ariz. July 22, 2022) (applying the *Welch*'s two-part test); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *3 (D. Ariz. Mar. 30, 2020), *motion to certify appeal denied*, No. CV-19-05217-PHX-SRB, 2020 WL 5232560 (D. Ariz. July 6, 2020) (same); *Ferguson v. United States*, No. 15CV1253 JM (DHB), 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016) (same); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006) (same).

Under the *Welch* test, the due care exception applies if (1) a statute or regulation "specifically proscribes a course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652 (citing *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995)).  Put differently, the due care exception applies only when an official was "reasonably executing the mandates of" a statute or regulation. *Id.* at 651.

The Government cites its general authority to enforce immigration law, but none of the cited statutes prescribe specific courses of action.  Those instructions were instead directed by executive order.  Plaintiffs correctly note that the Government failed to address, beyond using conclusory statements, how it took due care in following the dictates of the statutes it cites.  The Court finds the Government did not satisfy its burden to establish that the due care exception is applicable.  *See Green*, 630 F.3d at 1248–49.

### C. Private Analogue

The FTCA requires a plaintiff to allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The statute authorizes tort

recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA does not require identical circumstances, *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010), and courts must instead find the "most reasonable analogy" available, *Dugard v. United States*, 838 F.3d 915, 919 (9th Cir. 2016).

Plaintiffs allege IIED, negligence, and loss of consortium claims stemming from their separation. The Government argues no private analogue exists because "only the federal government has the authority to enforce federal law and make determinations concerning the detention of noncitizens." (Doc. 27 at 14.) While that statement is generally true, there are many situations where federal employees are held liable for torts under the FTCA—including law enforcement officers—and many courts have accepted similar, though not identical state torts. *See C.M.*, 2020 WL 1698191, at *2; *A.P.F. v. United States*, 492 F.Supp.3d 989, 994–95 (D. Ariz. July 27, 2020). In *Martinez v. United States*, the Court recognized an IIED claim based on border patrol agents' interrogation methods. No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *12 (D. Ariz. July 10, 2018). The facts of *Martinez* are reasonably analogous and would support allowing an IIED claim to proceed. However, the *Martinez* court recognized that the decision to interrogate and separate the defendant from his family were protected, discretionary actions but left it to the jury to decide if the method of interrogation involved malice. As for the negligence claim, Plaintiffs cite to *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020). In that case, the court recognized that the Bureau of Prisons ("BOP") has a duty to ensure the safety of the people in its facility while also recognizing that BOP decisions about inmate safety and housing are discretionary and precluded from suit under the FTCA, absent a violation of a mandatory regulation. *Id.* at *2–3. At this point in the case, Plaintiffs' allegations are sufficiently analogous to support a negligence claim.

Finally, Arizona defines loss of consortium as "a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support." *Pierce v. Casas*

*Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989). The focus of loss of consortium is on the interference with the normal relationship between parent and child. *Bickler v. Senior Lifestyle Corp.*, No. CV-09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010). Separating a mother from her daughter would satisfy this definition under Arizona law. Therefore, the Court agrees with Plaintiffs that sufficient private analogues exist to permit their FTCA claims.

### D. Constitutional Torts

The Government argues Plaintiffs' claims cannot be brought under the FTCA because they implicate constitutional violations. Plaintiffs respond that their claims, which may include constitutional violations, are ordinary tort claims with analogues under Arizona law. (Doc. 42 at 25.)

The Supreme Court has said constitutional torts are not cognizable under the FTCA. *See Meyer*, 510 U.S. at 477–78 (federal law cannot be the "source of substantive liability under the FTCA"). In this case, almost all of Plaintiffs' claims are based on an alleged constitutional violation and are not really tort allegations. Courts must look "beyond the complaint's characterization to the conduct on which the claim is based." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003) (cleaned up); *see also Thomas-Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir.1988) ("This circuit looks beyond the labels used to determine whether a proposed claim is barred" by the FTCA's intentional torts exception). Here, all claims based on the alleged due process violations should be precluded. Plaintiffs should not be able to evade the FTCA's exclusion of constitutional torts by labeling them negligence, IIED, and loss of consortium. *See Snow-Erlin v. United States*, 470 F.3d 804, 809 (9th Cir. 2006) ("Plaintiff cannot sidestep the FTCA's exclusion of false imprisonment claims by suing for the damage of false imprisonment under the label of negligence."). Therefore, any claim based on the alleged unconstitutional separation in violation of due process rights is precluded. What may proceed are allegations that the manner in which the plaintiffs were separated amounted to IIED.

### E. Institutional Torts

The Government asserts that the FTCA does not permit "institutional tort claims" against the Government or its agencies, and that Plaintiffs insufficiently allege claims against unidentified federal employees. The FTCA only permits lawsuits against the United States for tortious acts or omissions by its employees and/or agents. *Vander v. U.S. Dep't of Justice*, 268 F.3d 661, 663 (9th Cir. 2001). But the FTCA does not waive sovereign immunity for similar tortious acts or omissions by the government or one of its agencies. *See F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. July 22, 2022) (citing 28 U.S.C. § 2671). The Government cites *Lee v. United States* to characterize Plaintiffs' claims as "institutional" or "systemic." No. CV 19-08051-PCT-DLR, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020). In *Lee*, the court found the plaintiff's allegations "too vague and conclusory" because she failed to specify any employee's role in the alleged negligent act. *Id.* at *5–6.

Here, Plaintiffs criticize the Government's adoption of the Zero Tolerance Policy and other specific acts committed by employees from Health and Human Services, ICE, ORR, CBP, and the Department of Homeland Security. (*See* Doc. 1 at 6–7.) Individual officials craft the Government's policies, which are later implemented by the Government's individual employees. To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims. *See F.R.*, 2022 WL 2905040, at *4 ("[T]he Court lacks subject-matter jurisdiction" over "alleged tortious misconduct of the relevant agencies writ large"). But the Court finds Plaintiffs also allege tortious acts or omissions of individual federal employees over which it does have subject matter jurisdiction.

### F. Prohibited Under Arizona Law

Citing *Muscat v. Creative Innervisions LLC*, the Government argues Arizona law precludes recovery for injuries resulting from lawful detention. 244 Ariz. 194 (Ariz. Ct. App. 2017). The *Muscat* court held that the plaintiff's alleged injuries were not legally

cognizable because they resulted from the consequences of his own criminal conduct and subsequent incarceration. *Id.* at 199. The Court agrees with Plaintiffs that *Muscat* is both legally and factually inapposite and inconsequential to the Court's subject matter jurisdiction.

### G. Rule 12(b)(6)

The Government also moves to dismiss Plaintiffs' negligence claim for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Dismissal for failure to state a claim is appropriate when a plaintiff fails to assert a cognizable legal theory or presents insufficient facts to support the claim. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "All of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party." *Bates v. Mortg. Elec. Registration Sys. Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012). All allegations in the Complaint are assumed true, and the Court will construe all facts in the light most favorable to the nonmoving party. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But specific facts are unnecessary, as the statement must "only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To survive a motion to dismiss, a claim must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To sufficiently allege a negligence claim in Arizona, a plaintiff must allege facts to support these four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson*

Case 2:21-cv-00215-SMB   Document 60   Filed 09/30/22   Page 12 of 13

*v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).  Duty is a threshold issue, *id.*, and the party alleging negligence must show a duty exists, *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz. 2018).  Duty in Arizona negligence law is based on "recognized common law special relationships or relationships created by public policy."  *Id.* at 829.

Plaintiffs' Complaint contains insufficient factual allegations to plausibly state a negligence claim.  The Court finds Plaintiffs have adequately pled facts to support the duty of the Government to care for those in custody.  However, the Complaint does not explain which of the Government's employees allegedly breached the standard of care or describe the manner of that breach.  Similarly, the Complaint does not set forth a causal connection between the Government's employees' conduct and the injuries Plaintiffs claim to have sustained.  For these reasons, the Court will dismiss the negligence claim for failure to state a claim.

**IV.     LEAVE TO AMEND**

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).

The Court will dismiss the negligence claim with leave to amend.  Plaintiffs' amended complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure.  Within twenty-one (21) days from the date of entry of this Order, Plaintiffs may submit an amended complaint.  Plaintiffs must clearly designate on the face of the document that it is the "First Amended Complaint."  The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

**V.      CONCLUSION**

Therefore,

**IT IS ORDERED** denying in part and granting in part the Government's MTD as described above.  (Doc. 27.)

- 12 -

1    **IT IS FURTHER ORDERED** granting Plaintiffs leave to amend their complaint
2    within 21 days.
3        Dated this 30th day of September, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge