Joel W. Nomkin (AZ Bar No. 011939)
Christopher D. Thomas (AZ Bar No. 010482)
PERKINS COIE LLP
2525 E. Camelback Road
Suite 500
Phoenix, AZ 85016
Telephone: (602) 351-8000
jnomkin@perkinscoie.com
cthomas@perkinscoie.com

David Almeling* (CA Bar No. 235449)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700
Facsimile: (415) 984-8701
dalmeling@omm.com

*Attorneys for Plaintiffs*

[**Admitted pro hac vice*]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| B.A.D.J. on her own behalf and on behalf of her minor child, X.B.J.A.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV-21-00215-PHX-SMB<br><br>**UNOPPOSED MOTION FOR COURT APPROVAL OF SETTLEMENT OF MINOR'S CLAIMS** |

Plaintiffs B.A.D.J., on her own behalf and on behalf of her minor child X.B.J.A., (collectively, "Plaintiffs") ask the Court to enter the proposed Order accompanying this motion approving the settlements of the minor Plaintiffs' claims against the United States of America ("Defendant"). By e-mail dated May 22, 2024, counsel for the United States indicated that Defendant does not oppose the relief Plaintiffs seek herein.

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs brought this case under Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671–2680 ("FTCA"), against Defendant for its alleged mistreatment of Plaintiffs while in custody of Defendant. Plaintiffs allege that they were detained and forcibly and unlawfully separated by Defendant for more than three years, which caused them serious injury. The Court is familiar with the facts of the case, which are detailed in the Plaintiff's complaint (Dkt. 1) and partially summarized in the Court's order denying in part and granting in part the Defendant's motion to dismiss. Dkt. 60.

## I. The Settlement, Attorney's Fees and Costs.

This action commenced on February 8, 2021. Dkt. 1. On Sept. 30, 2022, the Court denied in part and granted in part Defendant's motion to dismiss. Dkt. 60). On October 21, 2022, Plaintiffs filed Amended Complaint. Dkt. 60. On November 18, 2022, Defendant answered. Dkt. 65. Thereafter, the parties engaged in discovery (including production of documents) and in settlement negotiations. Those negotiations have culminated in a settlement ("Settlement Agreement") whereby Defendant will pay Plaintiffs $260,000.00 (hereinafter "Settlement Amount") in settlement of all claims, contingent on Court approval. The Settlement Agreement is attached as Exhibit A.

The Settlement Agreement is contingent upon (a) Plaintiffs obtaining this Court's approval for the minor's portion of the Settlement Amount and (b) approval of the Settlement by the United States Department of Justice. Defendant asserts that it is able to seek approval of the Settlement by the Attorney General only after Court approval is obtained.

Plaintiffs request equal apportionment between the two Plaintiffs: (a) Plaintiff B.A.D.J. shall receive the amount of $130,000.00 in settlement of her

monetary claims against the United States; and (b) Plaintiff X.B.J.A., a minor, shall receive $130,000.00 in settlement of her monetary claims against the United States.

X.B.J.A.'s portion of the Settlement Amount shall be placed in a pooled minor's trust administered by Mission Management & Trust Company. Distribution of funds to X.B.J.A. from the pooled minor's trust will be overseen by Mission Management & Trust Company. Permissible distributions until X.B.J.A. turns 18 years old include but are not limited to expenses related to education and healthcare. When X.B.J.A. turns 18 years old, she will be able to request that all of the net income be distributed to her. When X.B.J.A. turns 21 years old, she may request that the trustee distribute an amount not more than one-half of the undistributed income and principal of the trust estate. At age 21, X.B.J.A. may also appoint herself as trustee or co-trustee, and may obtain distributions for a wider range of expenses to include those for maintenance and support. The entirety of the remaining undistributed income and principal will be distributed to X.B.J.A. when she turns 25 years old. Information about the pooled minor's trust and the agreement for funding the minor's trust are contained in Exhibit B.

Plaintiffs' counsel are not taking any attorneys' fees. Plaintiffs' counsel are also not recovering their costs out of the Settlement. Plaintiffs' counsel are waiving and releasing any claim for reimbursement of these costs.

## II. Reasonableness of the Settlement.

The district court in "which a minor's claims are being litigated has a duty to protect the minor's interests." *Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacaney v. Mendoza*,

573 F.2d 1075, 1080 (9th Cir. 1978)); *accord Martinez v. City of Avondale*, No. CV-12-1837-PHX-LOA, 2014 WL 880492, at *2 (D. Ariz. Mar. 6, 2014) (approving compromise settlement of minor's claim). To make that determination, a district court should consider "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. If those factors are established, then the settlement should be approved. *Id.* at 1182.

Plaintiffs believe that the proposed Settlement provides for a fair and reasonable allocation of the settlement proceeds to X.B.J.A. based on her circumstances and the status of the case. Here, X.B.J.A. would receive an equal share of the settlement—$130,000—which provides the recovery of a sum certain and avoids the delay and risks of further litigation. Other courts in this district have recently approved minor settlements of similar amounts in other FTCA family separation cases, including in which the minor plaintiff receives an equal share of the settlement proceeds. *See* Order Approving Settlement of Minor's Claims, *E.S.M. v. United States*, Case No. 21-00029 (D. Ariz. Mar. 28, 2024), ECF No. 100 (hereinafter "E.S.M. Settlement Order") (approving settlement of $157,500 for minor plaintiff, representing an equal share of the settlement proceeds); Order, *E.C.B. v United States*, Case No. 2:22-cv-00915-PHX-CDB (D. Ariz. Mar. 26, 2024), ECF. No. 50 (hereinafter "E.C.B. Settlement Order") (approving settlement of $140,000 for minor plaintiff, representing an equal share of the settlement proceeds); Order Approving Settlement of Minors' Claims, *A.I.I.L. v. United States*, Case No. CV-19-0481-TUC-JCH (D. Ariz. Mar. 12, 2024), ECF No. 134 (hereinafter "A.I.I.L. Settlement Order") (approving settlements of $97,500, $137,500, and $131,666 for the minor plaintiffs); Order Approving Settlement of

Minors' Claims, *N.R. v. United States*, Case No. 4:23-CV-00201-JR (D. Ariz. Feb. 26, 2024), ECF No. 36 (hereinafter "N.R. Settlement Order") (approving settlements of $80,000, $140,000, and $90,000 for the minor plaintiffs).

The court also need not appoint a guardian *ad litem* to approve this settlement. "When a parent brings an action on behalf of her minor child, the child is not unrepresented within the meaning of Rule 17(c), and the Court need not consider whether to appoint a guardian *ad litem* unless a conflict of interest exists between the parent and the minor." *Tex. Ins. Co. v. Athena Logistic Sols. LLC*, No. CV-23-00038-TUC-RM, 2024 WL 309942, at *2 (D. Ariz. Jan. 26, 2024). In situations like the instant case, where there is "no evidence indicating that [the parent] placed their interest above the interests of their children," courts in this district and others have held that there is no conflict of interest and a guardian *ad litem* need not be appointed, even if the settlement funds come from the same pool. *Id.* at *3; see also *Wright v. S. Ariz. Children's Advocacy Ctr.*, No. 21CV-00257, ECF No. 248 at 1 (D. Ariz. Oct. 5, 2023) (approving minor's settlement and finding that the court "need not appoint a guardian ad litem [because the] minor [was] adequately represented by a parent" who had "retained counsel [] to represent [the minor's] interests in [the] action."); *Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1185 (S.D. Fla. 2000), *aff'd* 212 F.3d 1338 (11th Cir. 2000) ("[W]hen a parent brings an action on behalf of a child, and it is evident that the interests of each are the same, no need exists for someone other than the parent to represent the child's interests under Rule 17(c)."). Furthermore, at least six other courts in this district have recently approved minor settlements of FTCA family separation lawsuits in which the minor's settlement proceeds were to be placed in a pooled minor's trust overseen by a fiduciary. E.S.M. Settlement Order, *supra*; E.C.B. Settlement Order, *supra*; A.I.I.L. Settlement Order, *supra*; N.R. Settlement Order, *supra*; Order

Approving Settlement of Minor's Claims, *Fuentes-Ortega v. United States*, Case No. CV-22-00449-PHX-DGC (D. Ariz. Feb. 2, 2024), ECF No. 84; Order Approving Settlement of Minor's Claims, *F.R. v. United States*, No. CV-21-00339-PHX-DLR, ECF No. 94 (D. Ariz. Nov. 1, 2023).

In this case, Plaintiff B.A.D.J. has not placed her interests above those of her child, X.B.J.A., and the Settlement Amount would be divided evenly among parent and child. Moreover, Plaintiff B.A.D.J.'s interests are aligned with those of her minor child, X.B.J.A, because both Plaintiffs are seeking damages for their alleged unlawful separation from each other. Further, the portions of the Settlement Amount allocated to minor X.B.J.A. will be placed into a trust.

Thus, this Court has the power to approve the Settlement Agreement and grant B.A.D.J. the authority to consummate the Settlement on behalf of minor Plaintiff X.B.J.A.

## III. Requested Action by the Court.

Plaintiffs ask the Court to enter the accompanying proposed Order regarding the minor Plaintiffs' Settlement Agreement that provides as follows: (1) settlement of this action for $260,000; (2) allocation of the Settlement Amount such that each Plaintiff would receive half of the total sum, with Plaintiff B.A.D.J. and X.B.J.A. each receiving $130,000; and (3) placement of the entirety of the Settlement Amount allocated to minor X.B.J.A. into a Mission Management & Trust Company trust fund.

## IV. Hearing.

The Court may approve this Settlement without a hearing. However, should the Court have any questions about the Settlement, Plaintiffs respectfully request that it conduct a hearing via telephone or video-teleconference to minimize costs.

RESPECTFULLY SUBMITTED this 23rd Day of May, 2024.

PERKINS COIE LLP

*/s/Joel Nomkin (with permission)*
Joel W. Nomkin
Christopher D. Thomas
*Attorneys for Plaintiffs*

O'MELVENY & MYERS LLP

*/s/David Almeling*
David Almeling*
*Attorneys for Plaintiffs*

[**Admitted pro hac vice*]

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

GARY M. RESTAINO
United States Attorney
District of Arizona
KATHERINE R. BRANCH
U.S. Attorney's Office – District of Arizona
40 N. Central Ave, Suite 1800
Phoenix, Arizona 85004
Phone: (602) 514-7659
Mobile: (480) 645-5248
Email: Katherine.Branch@usdoj.gov
*Attorneys for Defendant*

RESPECTFULLY SUBMITTED this 23rd day of May, 2024.

PERKINS COIE LLP

By *Joel Nomkin* (with permission)
Joel W. Nomkin
Christopher D. Thomas
*Attorneys for Plaintiffs*

O'MELVENY & MYERS LLP

By */s/ David Almeling*
David Almeling*
*Attorneys for Plaintiffs*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| B.A.D.J. on her own behalf and on behalf of her minor child, X.B.J.A.,<br>Plaintiffs,<br>v.<br>United States of America,<br>Defendant. | **No. CV-21-00215-PHX-SMB** |

**STIPULATION FOR COMPROMISE SETTLEMENT AND RELEASE OF <u>FEDERAL TORT CLAIMS ACT CLAIMS PURSUANT TO 28 U.S.C. § 2677</u>**

It is hereby stipulated and agreed by and between the undersigned Plaintiffs (meaning [redacted] and X.B.J.A. and any person, other than the Defendant and the Parties' attorneys, signing this agreement waiving and releasing claims, whether or not a party to this civil action), and the Defendant, United States of America, including its agents, servants, and employees (hereinafter "United States"), collectively, "the Parties," by and through their respective attorneys, as follows:

1. The Parties to this Stipulation for Compromise Settlement and Release (hereinafter "Stipulation") do hereby agree to settle and compromise each and every claim of any kind, whether known or unknown, including claims for wrongful death, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action under the terms and conditions set forth in this Stipulation. This release does not apply to or affect in any way any claims for immigration relief, which Plaintiffs have or may advance against the United States or any non-monetary relief to which Plaintiffs may be or become entitled by virtue of any class action lawsuit.

2. This Stipulation is not, is in no way intended to be, and should not be construed as, an admission of liability or fault on the part of the United States, its agents, servants, or employees, and it is specifically denied that they are liable to Plaintiffs. This Stipulation is entered into by all parties for the purpose of compromising disputed claims under the Federal Tort Claims Act and avoiding the expenses and risks of further litigation.

3. In consideration for Plaintiffs' agreement to accept the terms and conditions of this settlement, the United States agrees to pay Plaintiff [redacted] the amount of one-hundred and thirty thousand dollars ($130,000) and Plaintiff X.B.J.A. the amount of one-hundred and thirty thousand dollars ($130,000), for a total sum of two-hundred and sixty thousand dollars ($260,000.00) (hereinafter "Settlement Amount") as follows:

a. Within five (5) business days after counsel for the United States receives (1) this Stipulation signed by all parties to said document; (2) Order(s) approving the settlement and authorizing an individual or entity to sign on behalf of any minor or legally incapacitated adult; (3) the Social Security numbers or tax identification numbers of Plaintiffs and Plaintiffs' attorneys; (4) Plaintiffs' attorney's bank account number, bank routing information, and all information required for an electronic funds transfer ("EFT") of the Settlement Amount; and (5) an authorization by the Attorney General or his designee to conclude negotiations and to consummate the settlement, counsel for the United States will submit a request to the United States Treasury, requesting an EFT for the Settlement Amount, made payable to the O'Melveny & Myers Client Trust Account ("IOLTA Account"). Plaintiffs' attorneys agree to distribute the Settlement Amount to Plaintiffs, in accordance with the terms and conditions of this Stipulation.

b. With respect to the payment of the Settlement Amount, Plaintiffs stipulate and agree

that the United States will not sign an annuity application form, a uniform qualified settlement form, or any equivalent such forms, and that the United States will not pay the Settlement Amount into a qualified settlement fund or an equivalent fund or account, settlement preservation trust, or special or supplemental needs trust. Plaintiffs further stipulate and agree that Plaintiffs, Plaintiffs' attorney(s), any Guardian Ad Litem, and Plaintiffs' representatives (including any structured settlement annuity broker, regardless of whether said broker was retained by them or by someone else, either before, during, or after the settlement) will not attempt to structure the Settlement Amount in any way, form, or manner, including by placing any of the Settlement Amount into any qualified settlement fund or its equivalent. However, nothing in this Paragraph 3.b. precludes Plaintiffs from purchasing non-qualified annuities after Plaintiffs have received the Settlement Amount, but Plaintiffs agree not to represent to any person, entity, or agency that Plaintiffs are purchasing qualified structured settlement annuities, and Plaintiffs agree not to attempt to purchase such structured settlement annuities.

c. Plaintiffs stipulate and agree that Plaintiffs' attorneys shall escrow the aggregate face value of any and all currently known liens and currently known claims for payment or reimbursement, including any such liens or claims by Medicaid or Medicare, arising directly or indirectly from the acts or omissions that gave rise to the above-captioned action, whether disputed as legally valid or not, and shall not distribute to Plaintiffs any portion of the escrowed amount unless and until said liens and claims have been paid or resolved.

d. The Parties agree that any attorneys' fees owed by Plaintiffs relating to this Federal Tort Claims Act matter shall not exceed twenty-five percent (25%) of the Settlement Amount. 28 U.S.C. § 2678. The Parties further agree that any such attorneys' fees, along with Plaintiffs' costs

and expenses incurred in bringing the above-captioned action, and their costs, expenses, and fees (including all fees of any legal Guardian Ad Litem) associated with obtaining court approval of this settlement on behalf of any minor, incompetent adult, or estate required to sign this Stipulation, shall be paid out of the Settlement Amount, and not in addition thereto. The Parties agree that any fees, including fees of any legal Guardian Ad Litem, incurred in providing legal services in this matter and in any court proceedings reviewing the settlement for approval purposes shall be considered attorneys' fees and not costs, and shall be subject to the provisions of 28 U.S.C. § 2678.

4. Plaintiffs and Plaintiffs' guardians, Guardian Ad Litem (if any), heirs, executors, administrators, and assigns hereby accept the settlement and the payment of the Settlement Amount in full settlement, satisfaction, and release of any and all claims, demands, rights, and causes of action of any kind, whether known or unknown, including any future claims for survival or wrongful death, and any claims for fees, interest, costs, and expenses, arising from, and by reason of, any and all known and unknown, foreseen and unforeseen, bodily and personal injuries, including the death of either [redacted] or X.B.J.A., or damage to property, and the consequences thereof, which Plaintiffs or their heirs, executors, administrators, or assigns have had, now have, or hereafter may have against the United States on account of the acts or omissions that gave rise to the above-captioned action.

Plaintiffs, on behalf of themselves, their respective heirs, executors, administrators, assigns, predecessors and successors in interest, do hereby, for good and valuable consideration, the receipt of which is hereby acknowledged, release and forever discharge the United States, and its respective officials, agencies, representatives, officers, employees, agents, assigns and attorneys, from any and all claims, demands, rights, causes of actions, liens, and all other liabilities

whatsoever, whether known or unknown, suspected or unsuspected, that Plaintiffs have had, now have, or hereafter may have on account of the acts or omissions that gave rise to the above-captioned action, as well as claims relating to or arising out of the acts or omissions that gave rise to the above-captioned action that could have been but were not alleged in this action.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further agree to reimburse, indemnify, and hold harmless the United States from and against any and all claims, causes of action, liens, rights, or subrogated or contribution interests (whether such claims, causes of action, liens, rights, subrogated interests, or contribution interests sound in tort, contract, or statute) incident to, or resulting or arising from, the acts or omissions that gave rise to the above-captioned action, including claims or causes of action for wrongful death.

Plaintiffs and Plaintiffs' guardians, heirs, executors, administrators, and assigns further stipulate and agree that they are legally responsible for any and all past, present, and future liens and past, present, and future claims for payment or reimbursement, including any past, present, and future liens or claims for payment or reimbursement by any individual or entity, including an insurance company, Medicaid (including the State(s) of Arizona, California, Florida and Georgia) from the acts or omissions that gave rise to the above-captioned action. Plaintiffs stipulate and agree that they will satisfy or resolve any and all such past, present, and future liens or claims for payment or reimbursement asserted by any such individual or entity. Plaintiffs agree that, no later than thirty (30) days from the date any past, present, or future lien or claim for payment or reimbursement is paid or resolved by Plaintiffs, they will provide to the United States evidence that said lien or claim has been satisfied or resolved and that said lienholder has waived and released such lien or claim. The evidence required by the terms of this Paragraph may be satisfied

by a letter from Plaintiffs' attorneys representing to counsel for the United States that such lien or claim has been satisfied or resolved and that the lienholder has waived and released such lien and claim.

5. This compromise settlement is specifically subject to each of the following conditions:

a. The Attorney General or the Attorney General's designee must approve the terms and conditions of the settlement and authorize the attorney representing the United States to consummate a settlement for the amount and upon the terms and conditions agreed upon by the Parties, as set forth in this Stipulation.

b. The Parties must agree in writing to the terms, conditions, and requirements of this Stipulation. The Parties stipulate and agree that the Stipulation and the compromise settlement are null and void in the event the Parties cannot agree on the terms, conditions, and requirements of this Stipulation. The terms, conditions, and requirements of this Stipulation are not severable and the failure to agree, fulfill, or comply with any term, condition, or requirement renders the entire Stipulation and the compromise settlement null and void. The Parties must agree to the terms, conditions, and requirements of this Stipulation before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

c. Plaintiffs must obtain, at their expense, approval of the settlement by a court of competent jurisdiction on behalf of X.B.J.A. The Order approving the settlement on behalf of X.B.J.A. may be obtained from either the United States District Court for the District of Arizona or a state court of competent jurisdiction. The terms of any court Order, a draft of which shall be

provided by the United States, are a condition of this settlement. Plaintiffs agree to obtain such approval(s) in a timely manner: time being of the essence. Plaintiffs further agree that the United States may void this settlement at its option in the event any such approval is not obtained in a timely manner. In the event Plaintiffs fail to obtain such court approval(s), the entire Stipulation and the compromise settlement are null and void. Plaintiffs must obtain such court Order before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee.

d. Plaintiffs must obtain a release and waiver of any claim or cause of action (whether sounding in tort, contract, statute, or otherwise) that any alleged tortfeasor, if any, has or may have in the future against the United States arising out of the acts or omissions that gave rise to the above-captioned action. This condition is for the benefit of the United States exclusively. The United States will provide the form of Release and Waiver, or any changes to the form required by the United States, to be used by Plaintiffs in obtaining a Release and Waiver from any alleged tortfeasor. Before the United States Attorney's Office will seek settlement authority from the Attorney General or the Attorney General's designee, Plaintiffs must provide the United States with either (i) all such releases and waivers required by this Paragraph 5.d., or (ii) a written representation by Plaintiffs' attorneys stating that, after a diligent search of counsel's law firms' records and files, including expert and consultant reports, and of Plaintiffs' records and files, Plaintiffs and their attorneys are unaware of any such potential tortfeasor.

e. Plaintiffs must obtain an order from the United States District Court for the District of Arizona dismissing this action in its entirety with prejudice, with each side bearing its own costs, expenses, and fees, and with the District Court not retaining jurisdiction over the above

captioned action, this settlement, or the United States.

6. The Parties agree that this Stipulation, including all the terms and conditions of this compromise settlement and any additional agreements relating thereto, may be made public in their entirety, and Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

7. Plaintiffs shall be solely responsible for full compliance with all applicable Federal, state, and local tax requirements. Plaintiffs execute this Stipulation without reliance upon any representation by the United States as to tax consequences, and Plaintiffs agree that they are responsible for the payment of all taxes that may be associated with this settlement. Further, nothing in this Stipulation waives or modifies Federal, state, or local laws pertaining to taxes, offsets, levies, and liens that may apply to this Stipulation or the Settlement Amount proceeds. Plaintiffs execute this Stipulation without reliance on any representation by the United States as to the application of any such law. Plaintiffs, on behalf of themselves and their guardians, heirs, executors, administrators, assigns, subrogees, predecessors in interest, and successors in interest, understand and agree that this transaction may be reported to the Internal Revenue Service and other government agencies in the ordinary course of the business of the United States and may be subject to offset pursuant to the Treasury Offset Program.

8. Plaintiffs represent that they have read, reviewed and understand this Stipulation, and that they are fully authorized to enter into the terms and conditions of this agreement and that they agree to be bound thereby. Plaintiffs further acknowledge that they enter into this Stipulation freely and voluntarily. Plaintiffs further acknowledge that they have had sufficient opportunity to discuss this Stipulation with their attorneys, who have explained the documents to Plaintiffs, and

that Plaintiffs understand all of the terms and conditions of this Stipulation.

9. It is contemplated that this Stipulation may be executed in several counterparts, with a separate signature page for each party. All such counterparts and signature pages, together, shall be deemed to be one document.

WHEREAS, the Parties accept the terms of this Stipulation for Compromise Settlement and Release as of the dates written below:

Executed this_____day of___________, 2024.

GARY M. RESTAINO
**UNITED STATES ATTORNEY**

By: ____________________________________
KATHERINE BRANCH
ASSISTANT UNITED STATES ATTORNEY
CIVIL CHIEF – PHOENIX

**COUNSEL FOR DEFENDANT UNITED STATES OF AMERICA**

Executed this_____day of___________, 2024.

**ATTORNEYS FOR PLAINTIFFS**
**O'MELVENY & MYERS LLP**

By: __________________________
DAVID ALMELING

**ATTORNEYS FOR PLAINTIFFS**

Executed this_____day of___________, 2024.

[redacted]

[redacted]

Executed this_____day of___________, 2024.

**X.B.J.A.**

By:

[redacted]

**ON BEHALF OF X.B.J.A.**
**AS HER MOTHER AND LEGAL GUARDIAN**

# EXHIBIT B

# TRUST AGREEMENT

**TRUST AGREEMENT**, made as of this ____ day of ________________, 2024, between [redacted] in her capacity as mother and guardian for [redacted] (Case No. CV-21-00215-PHX-SMB in the United States District Court for the District of Arizona) pursuant to Court Order, as Settlor, and Mission Management & Trust Co. (hereinafter Mission Trust") as Trustee, also pursuant to Court Order.

## WITNESSETH:

**WHEREAS**, [redacted] (hereinafter "[redacted]") is a minor;

**WHEREAS**, as a result of a personal injury claim, [redacted] received a settlement award;

**WHEREAS**, pursuant to Court Order, [redacted] mother and guardian for [redacted] creates this Trust on her behalf.

**NOW, THEREFORE**, in consideration of the covenants herein contained and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Settlor hereby transfers, conveys, assigns and delivers to the Trustee as and for the trust estate the property titled to this Trust, to hold the same, and any other property which the Trustee hereafter may acquire, **IN TRUST**, for the purposes and upon the terms and conditions hereinafter set forth.

## ARTICLE ONE
## Purpose

The primary purpose of this Trust is to provide for the health and education of [redacted] until the Trust assets are distributed to her. The Trustee shall be particularly mindful of any health expenses incurred by [redacted] that are not otherwise covered by her health insurance. Of secondary importance are educational costs. The source of the funds for this Trust is from the recovery from a personal injury claim.

## ARTICLE TWO
## Distributions During the Life of [redacted]

The Trustee shall hold, manage, invest and reinvest the trust estate, and shall collect the income therefrom. The Trustee shall, in its sole and exclusive discretion[redacted] distribute to or

for the benefit of [redacted] as set forth in Article One.

Beginning on [redacted] eighteenth (18) birthday, [redacted] may request up to all of the net income be distributed to her.

On or about [redacted] twenty first (21) birthday, [redacted] may request that the Trustee distribute an amount not more than one-half of the undistributed income and principal of the trust estate, determined as of the first day [redacted] birth month. The Trustee may also pay or apply so much or all of the net income and the principal of the trust estate as the Trustee deems necessary or advisable for the health, education, maintenance or support of [redacted].

On or about [redacted] twenty fifth (25) birthday, [redacted] may request that the Trustee distribute the rest and remainder of the undistributed income and principal of the trust estate to her.

The Trustee shall notify [redacted] of her right to request a distribution from the Trust estate in writing no later than thirty (30) days after her designated birthday. [redacted] must present her request for distribution in writing to the Trustee.

The failure or delay of [redacted] to request one or more of the distributions of income and principal provided for herein, or any portion thereof, shall not prejudice her right to request and receive a distribution representing the same portion or amount at a later date chosen by [redacted] and to also request and receive any additional portion or amount to which she is further entitled at such later date.

[redacted] has discretion as to whether and when to request the distributions provided for herein. She may elect to have the income and principal remain in trust for her benefit for so long as she desires beyond her twenty fifth (25) birthday. Unless and until such time as all of the income and assets of the trust have been distributed outright to [redacted], the trust shall continue for [redacted] benefit as provided for herein.

In making any discretionary payment hereunder, the Trustee may consider, but shall not be required to consider, any other income and other resources of [redacted]. No such payment shall be charged upon a subsequent division of the trust estate against the principal of any share which may be set apart for any beneficiary hereunder.

**ARTICLE THREE**
**Disability of [redacted]**

If at any time [redacted] shall be under any legal disability or shall be unable to manage properly her affairs by reason of illness or mental or physical disability (whether or not a court of competent jurisdiction has declared [redacted] incompetent or mentally ill or has appointed a conservator or other legal representative for [redacted]), the Trustee may stop

making any mandatory income payments and instead pay or apply so much or all of the net income and the principal of the trust estate as the Trustee deems necessary or advisable for the health, education, maintenance or support of [redacted]. Any income not so paid or applied shall be accumulated and added to the principal of this trust at least annually.

In making any payment hereunder, the Trustee may consider, but shall not be required to consider, the income and other resources of [redacted]. No such payment shall be charged upon a subsequent division of the trust estate against the principal of any share which may be set apart for any beneficiary hereunder.

**ARTICLE FOUR**
**Payment of Debts**

Upon [redacted] death, the Trustee may pay from the principal of the trust estate the amount of all of the debts which [redacted] estate must pay, the expenses of her last illnesses and funeral, and the expenses of administering her estate. The Trustee may rely upon the written certification of the personal representatives, executors or administrators of [redacted] estate as to the amount of any such debt or expense, without any duty to inquire as to the correctness thereof, and, may make payment thereof either to said personal representatives, executors or administrators or to the taxing authority or person to whom such amount is owed.

**ARTICLE FIVE**
**Distribution of Trust Upon Death of [redacted]**

Upon the death of [redacted], the Trustee shall distribute any remaining balance of this Trust, including both income and principal, to such one or more persons or entities, other than to [redacted] estate, her creditors and the creditors of her estate, on such terms and conditions, either outright or in trust, as she shall appoint by the last unrevoked Last Will and Testament validly executed by [redacted] during her lifetime, which is delivered to the Trustee (either before or after death) and which specifically refers to and exercises this power of appointment.

Any trust property that is not effectively appointed by [redacted] in the manner described above shall be held, administered and equally to the then-living descendants of [redacted], in trust, as set forth in Articles One, Two and Three as if the beneficiary were [redacted]. If [redacted] has no living descendants, then the trust estate shall be distributed to her intestate heirs as determined under the laws of the jurisdiction in which she is residing at the time of her death.

If a beneficiary shall die prior to receiving a full distribution, the principal of such beneficiary's trust at that time remaining, together with any accrued and unpaid income thereon, shall be paid and distributed as if the beneficiary had predeceased [redacted]. If any such beneficiary is the income beneficiary of another trust under this Agreement, any property which would pass to such beneficiary shall instead be added to the principal of that trust.

**ARTICLE SIX**
**Distributions To Incapacitated Individuals**

In any case in which the Trustee is authorized or directed by any provision of this Agreement to pay or distribute income or principal to any person who has been declared as legally incapacitated, the Trustee, in the absolute discretion of the Trustee and without authorization of any court, may pay or distribute the whole or any part of such income or principal to such incapacitated person personally, or may apply the whole or any part thereof directly to the health, education, maintenance or support of such incapacitated person or may pay or distribute the whole or any part thereof to the guardian, committee, conservator or other legal representative, wherever appointed, of such incapacitated person or to the person with whom such incapacitated person may from time to time reside, or may pay or distribute the whole or any part thereof to a custodian, guardian or conservator of such individual. Evidence of such payment or distribution or the receipt therefor by the person to whom any such payment or distribution is made shall be a full discharge of the Trustee from all liability with respect thereto, even though the Trustee may be such person.

**ARTICLE SEVEN**
**Irrevocable**

Except as otherwise set forth herein, this Trust may not be amended or revoked without Court Order.

**ARTICLE EIGHT**
**Termination of Trusts**

Notwithstanding anything to the contrary contained herein, if the principal of any trust created under this Agreement shall at any time be of a size which in the sole judgment of the Trustee shall make it inadvisable, uneconomical or impractical to continue such trust, the Trustee, in the absolute discretion of the Trustee, may pay and distribute the entire principal of such trust and all accrued and undistributed income to the Primary Beneficiary, or her representative if she is under age eighteen (18), discharged of trust, and this trust thereupon shall terminate. No Trustee who is an income beneficiary shall participate in the aforesaid election to terminate a trust.

**ARTICLE NINE**
**Powers of Trustee**

In the administration of any property, real or personal, at any time forming a part of the trust estate, including accumulated income, and in the administration of any trust created hereunder, the Trustee, in addition to and without limitation of the powers provided by law, shall have the following powers to be exercised in the absolute discretion of the Trustee, except as otherwise expressly provided in this Agreement with the exception that the powers set forth below in (e) and (m) may only be exercised with prior court approval during [redacted] minority:

(a) To retain such property for any period, whether or not the same is of the character permissible for investments by fiduciaries under any applicable law, and without regard to the effect any such retention may have upon the diversity of investments;

(b) To sell, transfer, exchange, convert or otherwise dispose of, or grant options with respect to, such property, at public or private sale, with or without security, in such manner, at such times, for such prices, and upon such terms and conditions as the Trustee may deem advisable;

(c) To invest and reinvest in common or preferred stocks, securities, limited liability companies, investment trusts, mutual funds, regulated investment companies, bonds and other property, real or personal, foreign or domestic, including any undivided interest in any one or more common trust funds, whether or not such investments be of the character permissible for

investments by fiduciaries under any applicable law, and without regard to the effect any such investment may have upon the diversity of investments;

(d) To render liquid the trust estate or any trust created hereunder in whole or in part, at any time and from time to time, and to hold unproductive property, cash or readily marketable securities of little or no yield for such period as the Trustee may deem advisable;

(e) To lease any such property beyond the period fixed by statute for leases made by fiduciaries and beyond the duration of any trust created hereunder;

(f) To join or become a party to, or to oppose, any reorganization, readjustment, recapitalization, foreclosure, merger, voting trust, dissolution, consolidation or exchange, and to deposit any securities with any committee, depository or trustee, and to pay any fees, expenses and assessments incurred in connection therewith, and to charge the same to principal, and to exercise conversion, subscription or other rights, and to make any necessary payments in connection therewith, or to sell any such privileges;

(g) To form one or more corporations or limited liability companies, alone or with any person, in any jurisdiction, and to transfer assets to any new or existing corporation or limited liability company in exchange for stock or membership interests; to form one or more partnerships with any person in any jurisdiction, to have any trust or a nominee be a general or limited partner, and to transfer assets to any new or existing partnership as a capital contribution; to enter into one or more joint ventures or associations with any person in any jurisdiction, and to commit assets to the purposes of those ventures or associations; and to retain as an investment for any period any securities, partnership interests or other assets resulting from any such actions;

(h) To vote in person at meetings of stock or security holders and adjournments thereof, and to vote by general or limited proxy with respect to any stock or securities;

(i) To hold stock and securities in the name of a nominee without indicating the trust character of such holding, or unregistered or in such form as will pass by delivery, or to use a central depository and to permit registration in the name of a nominee;

(j) To elect to qualify any trust which is funded with Subchapter S stock as a small business trust pursuant to Section 1361 of the Internal Revenue Code, even if the election results in increased income tax liability for the trust;

(k) To initiate or defend, at the expense of the trust estate, any litigation relating to this Agreement or any property of the trust estate which the Trustee considers advisable, and to pay, compromise, compound, adjust, submit to arbitration, sell or release any claims or demands of the trust estate or any trust created hereunder against others or of others against the same as the Trustee may deem advisable, including the acceptance of deeds of real property in satisfaction of notes, bonds and mortgages, and to make any payments in connection therewith which the Trustee may deem advisable;

(l) To borrow money for any purpose from any source, including any trustee at any time acting hereunder, and to secure the repayment of any and all amounts so borrowed by mortgage or pledge of any property;

(m) To possess, manage, develop, subdivide, control, partition, mortgage, lease or otherwise deal with any and all real property; to satisfy and discharge or extend the term of any mortgage, deed of trust or similar instrument thereof; to execute the necessary instruments and covenants to effectuate the foregoing powers, including the giving or granting of options in connection therewith; to make repairs, replacements and improvements, structural or otherwise, or abandon the same if deemed to be worthless or not of sufficient value to warrant keeping or protecting; to abstain from the payment of real estate taxes, assessments, water charges and sewer rents, repairs, maintenance and upkeep of the same; to permit to be lost by tax sale or other proceeding or to convey the same for a nominal consideration or without consideration; to set up appropriate reserves out of income for repairs, modernization and upkeep of buildings, including reserves for depreciation and obsolescence, and to add such reserves to principal and, if the income from the property itself should not suffice for such purposes, to advance out of other income any sums needed therefor, and advance any income of the trust for the amortization of any mortgage, deed of trust or similar instrument on property held in the trust;

(n) To purchase from the legal representatives of the estate of [redacted] any property constituting a part of such estate or trust at its fair market value and to make loans for adequate consideration to such legal representatives or trustees, upon such terms and conditions as the Trustee may determine in the absolute discretion of the Trustee;

(o) To carry insurance of the kinds and in the amounts which the Trustee considers advisable, at the expense of the trust estate, to protect the trust estate and the Trustee personally against any hazard;

(p) To make distribution of the trust estate or of the principal of any trust created hereunder in cash or in kind, or partly in kind, and to cause any distribution to be composed of cash, property or undivided fractional shares in property different in kind from any other distribution, and to determine

the fair valuation of the property so allocated, with or without regard to the tax basis; to hold the principal of separate trusts in a consolidated fund and to invest the same as a single fund; to split trusts for purposes of allocating GST tax exemptions (within the meaning of Section 2642(a) of the Internal Revenue Code); and to merge any trusts which have substantially identical terms and beneficiaries, and to hold them as a single trust;

(q) To employ and pay the compensation of accountants, attorneys, experts, investment counselors, custodians, agents and other persons or firms providing services or advice, irrespective of whether the Trustee may be associated therewith; to delegate discretionary powers to such persons or firms; and to rely upon information or advice furnished thereby or to ignore the same, as the Trustee in its discretion may determine;

(r) To change the situs and/or governing law of any trust hereunder to any state the Trustee from time to time may deem desirable, and to take such further actions, including without limitation the amendment to the terms of the trust, as may be necessary or advisable to effectuate such change;

(s) To execute and deliver any and all instruments or writings which it may deem advisable to carry out any of the foregoing powers; and

(t) To exercise all such rights and powers and to do all such acts and enter into all such agreements as persons owning similar property in their own right might lawfully exercise, do or enter into.

Except as otherwise provided herein, the Trustee may determine, when there is reasonable doubt or uncertainty as to the applicable law or the relevant facts, which receipts of money or other assets should be credited to income or principal, and which disbursements, commissions, assessments, fees and other expenses should be charged to income or principal. Any distributions or dividends payable in the stock of a corporation, and rights to subscribe to securities or rights other than cash declared or issued by a corporation, shall be dealt with as principal. The proceeds from the sale, redemption or other disposition, whether at a profit or loss, and regardless of the tax treatment thereof, of any property constituting principal, including mortgages or similar instruments and real estate acquired through foreclosure or otherwise, shall normally be dealt with as principal, but the Trustee may allocate a portion of any such proceeds to income if the property disposed of produced no income or substantially less than the current rate of return on trust investments, or if the Trustee shall deem such action advisable for any other reason. The preceding provisions of this paragraph shall not be deemed to authorize any act by the Trustee which may be a violation of any law prohibiting the accumulation of income.

No person who deals with any Trustee hereunder shall be bound to see to the application of any asset delivered to such Trustee or to inquire into the authority for, or propriety of, any action taken or not taken by such Trustee.

**ARTICLE TEN**
**Appointment of Trustee**

The Settlor, pursuant to Court Order, appoints Mission Trust as Trustee hereunder.

Notwithstanding the above, the Settlor, until [redacted] reaches the age of 21, and thereafter, [redacted], retains the right to remove any Trustee and nominate and appoint a successor by doing so in writing that is both witnessed and notarized. Notice of removal and substitution of a Trustee shall be in writing and shall provide notice to the current Trustee at least 30 days in advance of a change of Trustee. [redacted] may serve as the sole Trustee upon reaching age 21, or she may appoint a co-Trustee to serve with her or appoint a Trustee.

The term "Trustee" wherever used herein shall mean the trustee in office from time to time. Any such trustee shall have the same rights, powers, duties, authority and privileges, whether or not discretionary, as if originally appointed hereunder.

So long as the Trustee is a corporate entity or licensed fiduciary, no bond, surety or other security shall be required of any Trustee acting hereunder for the faithful performance of the duties of Trustee. If the Trustee is not a corporate entity or licensed fiduciary, the Trustee shall post a bond to secure any unrestricted assets and shall restrict access to all assets that are not secured by the bond.

The Trustee shall be entitled to receive reasonable compensation for the services of the Trustee hereunder.

**ARTICLE ELEVEN**
**Accounts of Trustee**

The Trustee shall file provide annual accountings to the Settlor and legal guardians of [redacted] during the minority of [redacted] the Settlor and [redacted] when she reaches the age of 18, and thereafter to [redacted] only after she reaches the age of 21.

After the death of [redacted], the Trustee, at any time and from time to time, may render an account to the living person or persons who are entitled, at the time of such account, to receive all or a portion of the income of the trusts herein created. The approval of any person of full age, or a guardian or parent of a minor or incompetent person, to whom an account is rendered shall, as to all matters stated therein, be final and binding upon her or such minor or incompetent person, or any persons claiming through her or such minor or incompetent person, as the case may be. A person of full age, or a guardian or parent of a minor or incapacitated person, to whom an account is rendered shall be deemed to have approved the account if he assents to the account in writing or if he does not communicate to the Trustee her written objections to the account within sixty days after the receipt of the account (provided the account was accompanied by a notice of said sixty day period within which to raise objections).

**ARTICLE TWELEVE**
**Decisions of Trustee Are Conclusive**

The determination of the Trustee in respect of the amount of any discretionary payment of income or principal from any trust established hereunder, and of the advisability thereof, shall be final and conclusive on all persons, whether or not then in being, having or claiming any interest in such trust, and upon making any such payment, the Trustee shall be released fully from all further liability or accountability therefor.

The right of any beneficiary to any payment of income or principal shall in every case be subject to any charge or deduction which the Trustee may make against the same under the authority granted to the Trustee by any law or by this Agreement.

**ARTICLE THIRTEEN**
**Simultaneous Death**

For purposes of this Agreement, any beneficiary hereunder shall be deemed to have predeceased [redacted] or any other person upon whose death such beneficiary shall become entitled to receive income or principal unless such beneficiary shall survive [redacted] or such other person by more than seven (7) days. The provisions of this Agreement shall be construed as aforesaid, notwithstanding the provisions of any applicable law establishing a different presumption of order of death or providing for survivorship for a fixed period as a condition of inheritance of property.

**ARTICLE FOURTEEN**
**Rights of Beneficiaries Are Not Assignable**

No disposition, charge or encumbrance on the income or principal of any trust established hereunder shall be valid or binding upon the Trustee. No beneficiary shall have any right, power or authority to assign, transfer, sell, pledge, encumber, anticipate or otherwise dispose of such income or principal or any part thereof until the same shall be paid to such beneficiary by the Trustee. No income or principal shall be subject in any manner to any claim of any voluntary or involuntary creditor of any beneficiary or liable to attachment, execution or other legal or equitable process prior to its actual receipt by the beneficiary.

**ARTICLE FIFTEEN**
**Construction**

The validity and construction of this Agreement and the trusts created hereunder shall be governed by the laws of the State of Arizona.

Any provision herein which refers to a statute, rule, regulation or other specific legal reference which is no longer in effect at the time said provision is to be applied shall be

deemed to refer to the successor, replacement or amendment to such statute, rule, regulation or other reference, if any, and shall be interpreted in such a manner so as to carry out the original intent of said provision.

For purposes of this Agreement, the disability or incapacity of an individual (including [redacted] or any Trustee) shall be conclusively established by a written statement signed by such individual's then attending physician and filed with the records of any trust established hereunder attesting that, in such physician's opinion, such individual is unable to manage his or her affairs. Such written statement shall be conclusive evidence of such fact, and any third party may rely on same in dealing with any trust established hereunder and shall not be obliged to inquire whether such individual is no longer under such disability or incapacity at the time of such dealings.

Wherever used in this Agreement and the context so requires, the masculine shall include the feminine and the singular shall include the plural, and vice versa.

The captions in this Agreement are for convenience of reference, and they shall not be considered when construing this Agreement.

## ARTICLE SIXTEEN
## Binding Effect

This Agreement shall extend to and be binding upon the heirs, personal representatives, executors, administrators, successors and assigns of [redacted].

## ARTICLE SEVENTEEN
## Short Name

This Agreement and the trusts created hereunder may be referred to, in any other instrument, by the name: "The [redacted] Trust, Dated ______________________________, 2024" with or without specifying any change in Trustee or any amendment to this Agreement.

**IN WITNESS WHEREOF**, this Agreement has been duly executed as of the date first above written.

______________________________________
[redacted] Settlor

______________________________________
______________________, Vice President of Mission Management & Trust Company, Trustee

STATE OF CALIFORNIA )
)ss.
County of Monterey )

The foregoing instrument was acknowledged before me on the ______ day of ______________________________, 2024, by [redacted]

___________________________________
Notary Public

STATE OF ARIZONA )
)ss.
County of Maricopa )

The foregoing instrument was acknowledged before me on the _____ day of _________________________, 2024, by _________________________________, Vice President of Mission Management & Trust Company.

___________________________________
Notary Public